802 So.2d 230 (2001)
Howard Ross ROBERTS, Jr.
v.
Kimberlynn Moncus Hester ROBERTS.
2991247.
Court of Civil Appeals of Alabama.
May 11, 2001.
*232 M. Wayne Wheeler, Birmingham, for appellant.
Stephen R. Arnold, Birmingham, for appellee.
THOMPSON, Judge.
Howard Ross Roberts, Jr., and Kimberlynn Moncus Hester Roberts married on August 12, 1994. One child, a daughter, was born of the parties' marriage. The parties separated in January 1999, and the husband sued for a divorce. The wife answered and counterclaimed. The trial court heard ore tenus evidence and, on July 9, 1999, entered an order that awarded custody of the minor child to the wife, ordered the husband to pay child support, and set visitation. However, the July 9, 1999, order was not a final judgment because the trial court had yet to make a division of the parties' property, as the parties had requested in their pleadings. The trial court heard additional ore tenus evidence at a subsequent hearing. On June 22, 2000, the trial court entered a judgment in which it determined that the parties' antenuptial agreement was not enforceable. In its June 22, 2000, judgment, the trial court fashioned a property division *233 and restated the provisions of the July 9, 1999, order regarding custody, visitation, and child support. The husband filed a postjudgment motion pursuant to Rule 59, Ala.R.Civ.P.; the trial court denied that motion. The husband appealed.
On appeal, the husband first argues that the trial court erred in awarding custody of the parties' child to the wife. In an initial custody determination, the parties stand on equal footing and no presumption inures in favor of either parent. Smith v. Smith, 727 So.2d 113 (Ala.Civ. App.1998); Hall v. Hall, 571 So.2d 1176 (Ala.Civ.App.1990). The court applies the best-interests-of-the-child standard in deciding an initial award of custody. Ex parte Couch, 521 So.2d 987 (Ala.1988). In making its custody determination, the trial court considers factors such as the child's age and each parent's ability to provide for the emotional, social, moral, material, and educational needs of the child. Parker v. Parker, 628 So.2d 800 (Ala.Civ.App.1993). In addition, the court may consider the characteristics of each parent, including his or her age, character, stability, and health, as well as each parent's relationship with the child. Smith v. Smith, supra.
At time of the first hearing, the child was four years old and attended "Mother's Day Out" daycare a few days a week. The husband testified that he helped take care of the child and that he and the child have a close relationship. The wife, however, testified that she was the child's primary caretaker. Both parties testified that they were active in the child's life and were well able to care for her needs. It is clear from the record that both parents love the child and that each was capable of providing a good environment for the child. The trial court awarded custody of the child to the wife. Given the evidence in the record and the applicable standard of review, we cannot say that the trial court erred in its custody determination. We affirm the trial court's award of custody to the wife.
The husband next argues that the trial court erred in refusing to enforce the parties' antenuptial agreement. Antenuptial agreements have been held valid in Alabama. Ex parte Walters, 580 So.2d 1352 (Ala.1991); Strait v. Strait, 686 So.2d 1230 (Ala.Civ.App.1996); Thornburg v. Thornburg, 628 So.2d 885 (Ala.Civ.App. 1993); Mixon v. Mixon, 550 So.2d 999 (Ala.Civ.App.1989). Marriage itself may be sufficient consideration for an antenuptial agreement. Strait v. Strait, supra; Barnhill v. Barnhill, 386 So.2d 749 (Ala. Civ.App.1980), cert. denied, 386 So.2d 752 (Ala.1980). In Ex parte Walters, supra, the Supreme Court of Alabama approved the test, set forth by this court in Barnhill v. Barnhill, supra, for determining whether an antenuptial agreement is valid.
"In Barnhill, the Court of Civil Appeals held that the party attempting to rely on an ante-nuptial agreement must show:
"`[1] that the consideration was adequate and that the entire transaction was fair, just and equitable from the other person's point of view, or [2] that the agreement was freely and voluntarily entered into by the other party with competent independent advice and full knowledge of her interest in the estate and its approximate value.'
"[Barnhill v. Barnhill,] 386 So.2d at 751."
Ex parte Walters, 580 So.2d at 1354 (emphasis added).
The husband argues that he established the enforceability of the antenuptial agreement under the second prong of the test set forth in Barnhill v. Barnhill, supra. The husband testified that in February *234 1994 he presented the wife with a proposed antenuptial agreement drafted by his attorney; the wife testified that she could not recall when the husband had first given her the antenuptial agreement. At the time the husband first gave the wife the antenuptial agreement, the parties were engaged to be married in March 1994. The husband testified that he recommended that the wife obtain legal advice about the antenuptial agreement. The wife testified that she did not agree with the terms of the antenuptial agreement and that she refused to sign the agreement. The wife testified that she did not obtain legal advice about the antenuptial agreement because she did not agree with the provisions of the antenuptial agreement. The parties did not marry in March 1994, as they had originally planned; the record does not indicate the reason that the March wedding was canceled or postponed.
Nothing in the record indicates that the parties discussed the proposed antenuptial agreement after February 1994. The parties rescheduled their wedding for August 11, 1994. The husband testified that a few days before the wedding, he presented the wife with a document entitled "Preliminary Agreement." The wife testified that she received the Preliminary Agreement on the day before the wedding. The Preliminary Agreement provided that it would be construed as a "pre-marriage and/or post-marriage" agreement; that the parties "shall" execute the original antenuptial agreement within 30 days of August 12, 1994; and that, if the parties failed to execute the antenuptial agreement, the original antenuptial agreement "shall be construed as fully executed in full force, and legally enforceable." The wife testified that she did not read or understand the provisions of the Preliminary Agreement and that the husband did not present her with a copy of the antenuptial agreement to sign after the parties signed the Preliminary Agreement.
The wife agreed with the husband's testimony that the husband refused to marry her unless she signed the Preliminary Agreement. However, the wife testified that because the husband presented the Preliminary Agreement to her on the day before the wedding, she felt forced into signing the agreement. It is undisputed that the wife did not obtain legal advice regarding the Preliminary Agreement in the short period between the time she received the Preliminary Agreement and the parties' wedding. In the absence of specific findings of fact, this court must assume that the trial court made those findings of fact that would support its judgment, unless such findings would be clearly erroneous. Ex parte Patronas, 693 So.2d 473 (Ala.1997) (citing Ex parte Bryowsky, 676 So.2d 1322 (Ala.1996)). The evidence in the record would support a finding that the wife did not freely and voluntarily sign the Preliminary Agreement. See Mixon v. Mixon, 550 So.2d 999 (Ala.Civ.App.1989). Therefore, the court did not err in holding the agreement invalid.
The husband next argues that the trial court erred in failing to require the wife to comply with a pretrial order, by admitting evidence offered by the wife at trial that did not comply with the time limitations set forth for discovery by the pretrial order. The husband objects to the wife's failure to prepare a timely CS-41 form pursuant to the requirements of Rule 32, Ala.R.Jud.Admin.; to file her copies of the parties' joint income-tax returns; and to file a list of the property and indebtedness at issue in the case. The trial court's decision whether to allow or disallow evidence based on noncompliance with a pretrial order is within the discretion of the *235 trial court. Coca-Cola Bottling Co. United, Inc. v. Stripling, 622 So.2d 882 (Ala. 1993); Ex parte Baugh, 530 So.2d 238 (Ala.1988); Mitchell v. Moore, 406 So.2d 347 (Ala.1981). The trial court stated that it would admit the proposed evidence unless the husband demonstrated that he would be prejudiced by the admission of the evidence. The husband made no such showing. We cannot say the trial court abused its discretion by admitting the evidence.
The husband also argues that the trial court erred in fashioning its property division. The record indicates that the wife did not work outside the home after the parties' marriage. When the parties separated, the wife obtained employment at a veterinary clinic. The husband is a musician and plays in a band; he also owns a record label and a recording studio. Although he receives some income from those ventures, the parties' tax returns indicate that those businesses are not profitable. In 1994, the husband inherited from his mother shares of stock in a bank; that bank stock is worth in excess of $2,800,000. The husband receives interest and dividend income from his inheritance; he used the income from his inheritance to pay the parties' living expenses. The husband also admitted that he has continued to fund his two unprofitable businesses from his inheritance. The wife testified that, during the marriage, the husband invaded the principal of his inheritance to pay family expenses.
The husband's stock has a 1.5% return rate. The husband testified that he could not liquidate the stock to invest it at a higher rate of return without incurring a substantial tax burden. The husband also testified that he did not want to sell the stock because it had been owned by his family for three generations.
One month before the parties married, the husband purchased a $135,000 house from the proceeds of his inheritance; the house is not subject to a mortgage indebtedness. That house became the parties' marital residence. The wife testified that the husband promised to change the title to the house to reflect joint ownership of the house; however, he did not do so.
During their marriage, the parties purchased 20 acres of land in Chelsea. Title to that land is in both parties' names. The wife testified that the Chelsea property was worth approximately $15,000 per acre, or $300,000. The husband owns two motor vehicles. He also makes monthly payments on a third vehicle that is titled in his name; the wife drives that vehicle.
The wife alleged that during the marriage the husband was verbally abusive to her. The wife had left the marital home on at least one previous occasion, but the husband persuaded her to return home for the Christmas holidays. The parties separated permanently in January 1999.
A trial court's division of property following an ore tenus presentation of evidence is presumed correct on appeal and will not be reversed absent a plain and palpable abuse of discretion. Hall v. Mazzone, 486 So.2d 408 (Ala.1986); Welch v. Welch, 636 So.2d 464 (Ala.Civ.App.1994); Parrish v. Parrish, 617 So.2d 1036 (Ala. Civ.App.1993). A property division is required to be equitable, not equal. Parrish v. Parrish, supra. In fashioning a property division, the trial court considers the parties' earning abilities; their probable future prospects; their ages, health, and station in life; the duration of the marriage; and the conduct of the parties with regard to the breakdown of the marriage. Echols v. Echols, 459 So.2d 910 (Ala.Civ. App.1984).
In its judgment, the trial court awarded the wife the marital residence, valued at *236 $135,000; one-half of the proceeds of the sale of the parties' $300,000 property in Chelsea; her personal property and a portion of the furniture in the marital residence; the vehicle she drives, subject to the indebtedness on that vehicle; and $20,000 as a property settlement. The wife did not seek and was not awarded alimony.
It is clear that the husband used his inheritance for the support of the family and for the common benefit of the parties during their marriage, and, therefore, that the trial court properly considered the value of the husband's estate in fashioning its property division. See § 30-2-51, Ala. Code 1975. The trial court's judgment awarded the wife approximately $305,000 in marital assets, plus her personal property and her vehicle, subject to its indebtedness. The husband was awarded his businesses and his interest in his inheritance, which the trial court valued in excess of $2,800,000. In arguing the property division is inequitable, the husband, in his brief on appeal, includes in his calculation of the amount awarded to the wife amounts reflecting the amount he pays for support of the child; the value of the life insurance policy he was ordered to provide for the benefit of the child; the trial court's award of an attorney fee to the wife; the full cost of the family's medical insurance; the value of "improvements" to the Chelsea property in excess of the $300,000 value of that property; and the amounts he has paid to support the wife and child during the parties' separation, including the cost of insurance, his child-support payments, and a $1,000 per month "rent" charge for the wife and child's residing in the debt-free marital home during the parties' separation. Our review indicates that the trial court awarded the wife approximately 10% of the marital assets. We cannot say that the husband has demonstrated that the trial court abused its discretion in fashioning its property division.
The husband also argues that the trial court erred in admitting into evidence the deposition of Douglas Dent, a financial planner who was a witness for the wife. The husband argues that the trial court should not have used Dent's testimony to impute income to the husband for the purpose of calculating his child-support obligation. Dent's testimony was that the husband could generate a higher income on his inheritance than the 1.5% rate of return he currently earns. Dent testified that the rate of return on an investment depended on, among other things, the goal of the person investing the money. Dent stated that if the husband's goal was to earn income on his inheritance, then the husband could earn a rate of return of approximately 5% to 8% if he sold at least a portion of the stock and invested the funds in bonds or securities. The husband's attorney cross-examined Dent regarding the possible tax consequences of investing at a higher rate of return and regarding whether Dent had used information specific to the husband. The husband argues that Dent's testimony was not specific in formulating an investment plan for him and that Dent's testimony was speculative. However, it appears that the wife offered Dent's testimony for the purpose of illustrating that under a different financial strategy, the husband could earn significantly higher rates of return on his inheritance. The trial court's decision to admit or to exclude evidence is within its sound discretion, and that decision will not be reversed on appeal absent a showing of an abuse of discretion. City of Birmingham v. Moore, 631 So.2d 972 (Ala.1994); Eason v. Comfort, 561 So.2d 1068 (Ala. 1990). We cannot say the trial court abused its discretion in admitting Dent's deposition testimony.
*237 We also conclude that Dent's testimony and other evidence presented at trial support the court's decision to impute income to the husband for the purpose of calculating his child-support obligation. We note that the husband does not argue that the trial court was not permitted to impute unearned income to him pursuant to Rule 32(B)(5), Ala.R.Jud.Admin. This court is not inclined to approve such an argument, assuming it had been made, given the purpose of the Rule 32 "Child Support Guidelines." See Davis v. Davis, 535 So.2d 183 (Ala.Civ.App.1988) (the Child Support Guidelines were formulated to assist the courts in arriving at more equitable awards of child support). Further, a noncustodial parent's obligation to support his or her minor child is not based solely on his or her wages, but may also include income derived from other sources. Ennis v. Venable, 689 So.2d 165 (Ala.Civ. App.1996).
The trial court found that "even with minimal investment" at a rate of approximately 4%, the husband could earn on his inheritance an income of approximately $112,000 per year. The husband testified regarding the reasons he has not invested his inheritance to earn greater income. Those reasons include, among other things, a sentimental attachment to his family's long-standing interest in the bank in which he owns the stock, and the capital-gains consequences of liquidating his inherited shares of stock. Although the husband acknowledged that he has not discussed liquidating or diversifying his inheritance with a financial analyst, he testified that he would lose approximately 25% of the inheritance by liquidating it, because, he testified, the stock had a "low basis." However, the husband inherited the stock in February 1994, and would, therefore, have received a step-up in basis at that time. See 26 U.S.C.A. § 1014. The trial court questioned the husband regarding the trend of the stock since the time the husband inherited it. The husband answered that the value had fluctuated and that "it isn't quite back to where it was." Thus, there is evidence from which to conclude that the tax consequences of liquidating or diversifying would be minimal, given the husband's step-up in basis and the failure of the stock to appreciate in value since the husband inherited it. We note that on this ground, the trial court could have disbelieved the husband's testimony regarding the cost of liquidating or diversifying his inheritance. While the husband may have reasons for not investing his inheritance at a higher rate of return, those reasons are not necessarily controlling in determining whether income should be imputed to him for the purposes of calculating child support, particularly where the husband relies on that investment income to support himself and the child. The trial court is given discretion in determining whether to impute income to a noncustodial parent. Mitchell v. Mitchell, 723 So.2d 1267 (Ala.Civ.App.1998). Given the conflict in the evidence, we cannot say the trial court erred in imputing income to the husband.
Last, the husband argues that the trial court erred in deviating from the Child Support Guidelines of Rule 32, Ala.R.Jud.Admin.
"The law is clear that child support is a matter that rests soundly within the trial court's discretion and that such judgments will not be reversed absent a showing that the trial court abused its discretion. Conradi v. Conradi, 567 So.2d 364 (Ala.Civ.App.1990). When making a child support determination, the trial court must consider the needs of the child and the parent's ability to pay. Morrison v. Kirkland, 567 So.2d 363 (Ala.Civ.App.1990). A trial court's *238 determination regarding child support is governed by Rule 32, Ala.R.Jud.Admin., which provides for specific instances wherein application of the guidelines is inappropriate. One such instance is where, as here, the evidence reveals that the parent[s'] income surpasses the support schedule, and the trial court is accorded discretion to determine the appropriate amount of child support. Rule 32(C)(1), Ala.R.Jud.Admin.; Anonymous v. Anonymous, 617 So.2d 694 (Ala. Civ.App.1993)."
Boykin v. Boykin, 628 So.2d 949, 951-52 (Ala.Civ.App.1993).
In this case, the trial court ordered the husband to pay $900 per month in child support. In its judgment, the trial court stated that it deviated from the Child Support Guidelines in establishing the husband's child-support obligation because the parties' incomes exceeded the uppermost level of the child-support schedule; it also stated that it deviated from the Child Support Guidelines because: "In setting the amount [of child support], the Court has taken into consideration the value of the [wife's] possession of the marital residence, the income of the [wife], and the reasonable earning potential of the [husband]." Where the parties' incomes exceed the uppermost limits of the child-support schedule contained in the Rule 32 Child Support Guidelines, the establishment of the noncustodial parent's child-support obligation is within the discretion of the trial court. O'Neal v. O'Neal, 678 So.2d 161 (Ala.Civ. App.1996). Given the trial court's factual findings, we cannot say the trial court abused its discretion in establishing the husband's child-support obligation.
The trial court's judgment is affirmed.
The appellee's request for an attorney fee is granted in the amount of $4,500.
AFFIRMED.
YATES, P.J., and CRAWLEY and PITTMAN, JJ., concur.
MURDOCK, J., concurs in part and concurs in the result in part.
MURDOCK, Judge, concurring in part and concurring in the result in part.
I concur in the reasoning of the majority's opinion, except insofar as it endorses the trial court's method for determining the appropriate amount of child support to be awarded. As to that issue, I concur in the result.