THOMAS, Judge.
Rosemary Posey Brown (“the wife”) and James Earl Brown (“the husband”) were married on August 10, 1996. Two days before the parties’ marriage, the husband executed an antenuptial agreement; he presented the agreement to the wife the following day. The wife executed the agreement on August 9, 1996, and the parties married the following day. In September 2003, the parties separated; the husband filed for divorce in December, alleging that the parties were no longer compatible. The husband attached the parties’ antenuptial agreement to his divorce complaint.
After several continuances, the trial court heard the testimony of the husband and the wife on October 26, 2005. The trial court then entered a judgment declaring the antenuptial agreement valid, dividing the parties’ property, and awarding the wife alimony. After the trial court considered the husband’s timely postjudgment *1213 motion, the trial court amended its judgment in part to deny the wife alimony because she had waived all right to alimony in the antenuptial agreement. The wife appealed the divorce judgment, arguing that the trial court had erred when it found the antenuptial agreement to be enforceable and denied her claim for alimony; the husband filed a timely cross-appeal, arguing that the trial court had not enforced the antenuptial agreement appropriately because it had awarded the wife the time-share in Orlando, Florida, owned by the husband before the marriage and because it had awarded the wife $60,000 representing her interest in the husband’s Wachovia account, which was his separate property under the agreement. The husband also argues that the trial court erred by awarding the wife a far larger share than him of the parties’ marital property and by not recognizing the husband’s claim that the wife had converted certain funds when she forged the husband’s name to a mortgage-satisfaction document and withdrew the proceeds from that mortgage payoff from the parties’ joint bank account.

The Wife’s Appeal

The wife argues that the trial court erred by enforcing the antenuptial agreement she signed the day before the wedding. She specifically argues that she did not read the agreement before she signed it, that she did not secure independent legal advice before signing the agreement, that the atmosphere at the time she signed the agreement was coercive, and that the husband did not fully disclose the value of his assets in his schedule of assets appended to the agreement. Thus, the wife argues that the antenuptial agreement is unenforceable under Alabama law.
“As a general rule, antenuptial agreements are valid and enforceable under Alabama law. Barnhill v. Barnhill, 386 So.2d 749, 751 (Ala.Civ.App.), cert. denied, 386 So.2d 752 (Ala.1980). However, ‘[b]ecause of the confidential relationship of the two parties, such contracts are scrutinized by the courts to determine their justice and fairness.’ Allison v. Stevens, 269 Ala. 288, 291, 112 So.2d 451, 453 (1959). Antenuptial agreements must satisfy one of two tests to be considered valid. Allison, 269 Ala. at 291, 112 So.2d at 453; Barnhill, 386 So.2d at 751.
“A party seeking to enforce an ante-nuptial agreement must prove either:
“ ‘that the consideration was adequate and that the entire transaction was fair, just and equitable from the other party’s point of view or that the agreement was freely and voluntarily entered into by the [other party] with competent independent advice and full knowledge of [that party’s] interest in the estate and its approximate value.’
“Barnhill, 386 So.2d at 751 (citing Allison, 269 Ala. at 291, 112 So.2d at 453) (emphasis added). As applied by this court in the cases since Barnhill, the elements of the second test are considered as proof of the overall fairness required by test one. See Barnhill, [386 So.2d at] 752; Woolwine v. Woolwine, 519 So.2d 1347, 1350 (Ala.Civ.App.1987). However, this court has required only that the party against whom the agreement is being enforced have a general knowledge, not a full knowledge, of the other’s estate. See Barnhill, 386 So.2d at 752; Woolwine, 519 So.2d at 1350.”
Lemaster v. Dutton, 694 So.2d 1360, 1362-63 (Ala.Civ.App.1996).
“In a case in which the evidence is presented to the trial court ore tenus, such as this one, the findings of the trial court are presumed correct and will not be set aside unless they are plainly and palpably wrong or unjust.” Tibbs v. Anderson, 580 So.2d 1337, 1339 (Ala.1991). “Further *1214 more, where the trial court does not make findings of fact, it will be assumed that the trial court made those findings that were necessary to support its judgment, unless the findings would be clearly erroneous.” Ex parte Walters, 580 So.2d 1352, 1854 (Ala.1991).
The wife is a 54-year-old former real-estate agent. She worked as a real-estate agent in the Orange Beach-Gulf Shores area for several years. She resigned from her position shortly before the marriage at the husband’s request; he had indicated that he wanted her to stay home and that he had sufficient income to support them without her income.
The wife does not and cannot dispute that consideration existed to support the antenuptial agreement. Marriage itself can be sufficient consideration for an antenuptial agreement, Barnhill v. Barnhill, 386 So.2d 749, 751 (Ala.Civ.App.1980); in addition, the parties’ mutual relinquishment of rights in each other’s estate can serve as consideration. Tibbs, 580 So.2d at 1339. Thus, we now turn to whether “the entire transaction was fair, just and equitable from [the wife’s] point of view.” Lemaster, 694 So.2d at 1363.
The wife complains that the transaction was not fair and equitable. She makes much of the facts that she did not read the agreement and that she did not secure independent legal advice before signing the agreement, which have both been held to be indicia of the fairness of an antenup-tial agreement. See Woolwine v. Woolwine, 519 So.2d 1347, 1350 (Ala.Civ.App.1987). She also complains that the husband did not disclose the value of his estate in the schedule of assets appended to the antenuptial agreement and that the husband’s giving her the antenuptial agreement on the day before the wedding created a coercive atmosphere in which she felt compelled to sign the agreement.
The fact that the wife contends that she did not read the agreement is, in our opinion, of no consequence here. She had the ability to do so, was not prevented from doing so, and chose not to do so despite the fact that she signed the document. As a real-estate agent, the wife was familiar with the import of signing a legal document. Alabama law provides that
“in the absence of fraud or misrepresentation, a party is bound by the terms of a contract, even if he fails to read it. The law is equally clear that ordinarily when a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract and will be bound thereby.”
Power Equip. Co. v. First Alabama Bank, 585 So.2d 1291, 1296 (Ala.1991) (internal citations omitted); accord Wilcoxen v. Wilcoxen, 907 So.2d 447, 450 (Ala.Civ.App.2005); and Allen v. Allen, 903 So.2d 835, 841 (Ala.Civ.App.2004). Thus, the wife cannot now attempt to void the agreement on the basis of her choice not to rend that agreement.
The wife further complains that she was not awai’e of the extent of the husband’s estate and, therefore, that the antenuptial agreement is not fair, just, and equitable. However, Alabama law does not require that the parties know the exact value of each other’s estate in order to execute a binding antenuptial agreement. Lemaster, 694 So.2d at 1363. A general knowledge of the extent of the other party’s estate is all that is necessary. Id. The wife states in her brief that “[i]t was quite clear that the husband was a millionaire.” Based on the wife’s own testimony, the wife knew before the marriage that the husband had extensive property holdings and that he was financially secure enough *1215 to insist that she not work because his income was more than enough to provide for them. We therefore cannot agree that the failure of the husband to list the values of the property he owned or his net worth on the schedule of assets appended to the antenuptial agreement prevents its enforcement; the record evidence supports a conclusion that the wife was aware of the general extent of the husband’s assets at the time of the execution of the antenuptial agreement.
The wife’s failure to secure independent legal advice in the present case, while certainly regrettable, is not alone sufficient to void the agreement. See Strait v. Strait, 686 So.2d 1230, 1234 (Ala.Civ.App.1996). The wife testified that she telephoned her attorney on the day she executed the ante-nuptial agreement; according to the wife, she was told that the attorney was unavailable. The wife stated that she called the attorney several times that day, up until approximately 4:30 p.m., when she said she had to sign the agreement in order to get it returned to the husband’s attorney. In Strait, the wife testified in her deposition that she had not had time to seek legal advice regarding the antenuptial agreement she had signed, and this court affirmed a summary judgment determining that the antenuptial agreement was valid, stating: “This court has held that when a spouse has at least a general knowledge of what he or she is relinquishing and a general knowledge of the extent of the other spouse’s estate, an antenuptial agreement based on adequate consideration is fair, just, and equitable.” Strait, 686 So.2d at 1234. We conclude, therefore, that the failure to obtain independent legal advice, alone, is not fatal to the validity of the antenuptial agreement in the present case.
The wife also argues that the husband’s presenting her with the antenuptial agreement on the day before the wedding, when the preparations for the wedding had already been made and out-of-town guests had already arrived, and at a time when obtaining legal advice was hampered by time constraints, created a coercive atmosphere in which she felt compelled to sign the agreement. In support of her argument, the wife relies on Ex parte Williams, 617 So.2d 1032, 1035 (Ala.1992); Roberts v. Roberts, 802 So.2d 230, 234 (Ala.Civ.App.2001); and Mixon v. Mixon, 550 So.2d 999, 1000 (Ala.Civ.App.1989). Although the wife is correct that in Ex parte Williams the supreme court reversed a summary judgment holding an antenuptial agreement valid because questions of fact existed regarding whether an expectant mother’s choice between signing an antenuptial agreement as a condition to marriage to legitimize her unborn child and being left to bear the stigma of unwed pregnancy because of her moral objection to abortion created a coercive atmosphere in which she had no choice but to sign the antenuptial agreement, Ex parte Williams, 617 So.2d at 1035, we cannot agree that the holding in Ex parte Williams is of benefit to the wife in the present case. First, the reversal of the summary judgment in Ex parte Williams was based on the fact that there existed genuine issues of material fact regarding whether a coercive atmosphere existed. Id. In the present case, the trial court, in its role as fact-finder, see Ex parte Walters, 580 So.2d at 1354 (indicating that the conflicting evidence presented to the trial court would support a conclusion that the antenuptial agreement was valid), must have determined that the atmosphere surrounding the execution of the antenuptial agreement in the present case was not so coercive as to warrant finding that the antenuptial agreement was unenforceable.
Similarly, we are not convinced by the wife’s argument that Mixon compels a re *1216 versal of the trial court’s judgment enforcing the antenuptial agreement. In Mixon this court affirmed a trial court’s judgment divorcing the Mixons and dividing their property because the antenuptial agreement between the parties was determined to be invalid. Mixon, 550 So.2d at 1000. The facts in Mixon indicated that the wife had refused to sign the agreement when it was presented to her on the eve of the wedding and that she had been unable to secure independent legal advice due to the timing of the presentment of the agreement; however, the wife executed the agreement the following day with the express condition that it be rewritten, which condition was written on the agreement and either signed or initialed by each party. Id. Thus, this court affirmed the trial court’s decision not to enforce the agreement, stating that “[w]e are not convinced that the transaction was fair and just from the wife’s point of view, nor is there any evidence that the wife freely and voluntarily entered into the agreement with independent legal advice.” Id. However, a more simple basis supporting the determination that the antenuptial agreement was invalid is the obvious conclusion that the wife in Mixon, by virtue of her express requirement that the agreement be rewritten, did not enter into the antenuptial agreement that was presented to her. The lack of independent legal advice, then, was simply an additional fact that motivated the wife to protect her interests by demanding that the agreement be rewritten. Thus, we do not find the wife’s reliance on Mixon convincing.
Finally, we must consider the holding in Roberts, in which this court affirmed a trial court’s determination that an ante-nuptial agreement presented by the husband was invalid. The parties had originally planned to marry in March 1994. Roberts, 802 So.2d at 234. In February 1994, the husband presented the wife with an antenuptial agreement. Id. at 233-34. According to the husband, he recommended that the wife seek independent legal advice regarding the agreement. Id. at 234. The wife, however, testified that she did not seek any legal advice because she did not agree to the terms of the agreement. Id. The parties did not marry in March; they rescheduled their wedding for August 1994. Id. The husband testified that a few days before the wedding he gave the wife a document entitled “Preliminary Agreement.” Id. The wife recalled receiving the Preliminary Agreement on the day before the wedding. Id. The Preliminary Agreement required the parties to execute the original antenuptial agreement within 30 days of the marriage and provided that, if the original antenuptial agreement were not so executed, the original antenuptial agreement “ ‘shall be construed as fully executed in full force, and legally enforceable.’ ” Id. The wife testified that she “did not read or understand the provisions of the Preliminary Agreement.” Id. Because the trial court did not make specific findings of fact regarding the basis for its determination that the antenuptial agreement was invalid, the Roberts court assumed that the trial court must have determined that the wife’s failure to obtain independent legal advice and the wife’s feeling compelled to sign the agreement because it was presented to her on the day before the wedding led the trial court to conclude that the wife did not freely and voluntarily sign the antenuptial agreement. Id. The Roberts court relied on Mixon to support its determination that such a finding would support a judgment declaring the antenuptial agreement invalid. Id. Although not expressly mentioned, the Roberts court also relied on the ore tenus standard to uphold the trial court’s determination that the Preliminary Agree *1217 ment, and therefore the antenuptial agreement, was invalid.
We are likewise bound by the ore tenus presumption in the present case. Tibbs, 580 So.2d at 1339. And we must also presume that the trial court made those findings necessary to support its judgment. Ex parte Walters, 580 So.2d at 1354. In light of those precepts, we fail to see how the wife in the present case can succeed in arguing that the trial court was required to find that the antenuptial agreement, which she did not read, was somehow forced upon her or that she was coerced into signing it. The wife was a real-estate agent who undoubtedly had experience dealing with legal contracts. She decided not to read the antenuptial agreement because, as she put it at trial: “It doesn’t matter. He told me I had to sign it and I signed it.” She attempted to obtain legal advice from her attorney, and, despite the fact that she was informed of his unavailability, she did not seek other counsel but continued to telephone his office during the day. The trial court could have determined that the wife was aware of the import of the antenuptial agreement and that her decision to sign it without reading it negated any need for her to seek independent legal advice regarding the agreement. Because the record would support such a determination, we will not disturb the trial court’s conclusion that the antenuptial agreement is valid on the basis of Ex parte Williams, Mixon, or Roberts.
The wife’s second argument on appeal, that the trial court erred by not awarding her alimony, is pretermitted in light of our decision upholding the determination that the antenuptial agreement was valid. Likewise, we decline to award the wife an attorney fee in light of our resolution of her appeal.

The Husband’s Cross-Appeal

The husband argues that the trial court erred in allowing the wife to choose between two time-shares owned by the husband when one, the Orlando timeshare, was owned by the husband before the marriage and was listed in his schedule of assets and that the trial court erred in awarding the wife $60,000 as alimony-in-gross representing the wife’s alleged share of his Wachovia account, which the husband maintains is his separate property under the antenuptial agreement. The husband further argues that the trial court erred in awarding the wife the bulk of the parties’ jointly owned property because, he asserts, in doing so, the trial court must have improperly considered the husband’s separate estate. Finally, he argues that the trial court erred in rejecting his claim to mortgage proceeds he argues were wrongfully converted by the wife after she allegedly forged his name to a mortgage-satisfaction document.
The testimony at trial revealed that the husband had admitted to committing one act of adultery with a woman named G.D. in the summer of 2002. Although he denied having continued a sexual relationship during the period between the summer of 2002 and the parties’ separation, he did resume a sexual relationship with G.D. after the parties’ separation. The wife testified that she had suspected that the husband had engaged in other extramarital relationships, citing frequent and some late-night telephone calls as evidence. In addition, the wife complained that the husband’s attitude during the marriage had caused friction; she commented that he was very controlling and expected things to be done his way. The husband, likewise, made allegations of infidelity against the wife. His allegations, however, were not supported by any evidence.
*1218 The wife complained that the husband had placed the proceeds of certain real-estate transactions in 2000 involving jointly held property in his “business” account, thereby keeping those proceeds from the wife. In addition, the husband complained that the wife had forged his name on a mortgage-satisfaction document and that she had withdrawn the amount of the mortgage payoff out of the bank once she deposited the check into the parties’ jointly held account. The trial court noted in its judgment that it had considered the husband’s claim in making the property division.
As noted previously, the wife quit her job as a real-estate agent when she married the husband. The husband’s income is made up of $4,748 per month in military refeement benefits and $1,041.20 per month in Social Security benefits. The wife has no retirement accounts.
The trial court has wide discretion over alimony and the division of property, and it may use whatever means are reasonable and necessary to equitably divide the parties’ property. Grimsley v. Grimsley, 545 So.2d 75, 77 (Ala.Civ.App.1989). Its judgment is presumed correct and will not be reversed unless it is so unsupported by the evidence so as to be unjust and palpably wrong. Grimsley, 545 So.2d at 76. In making the division, the trial court may consider several factors, including the parties’ respective present and future earning capacities, their ages and health, their conduct, the duration of the marriage, and the value and type of marital property. Lutz v. Lutz, 485 So.2d 1174, 1176 (Ala.Civ.App.1986). Because the facts and circumstances of each divorce case are different, this court must also consider the particular facts and circumstances of the case being reviewed. Murphy v. Murphy, 624 So.2d 620, 623 (Ala.Civ.App.1993).
The trial court allowed the wife to choose between a time-share in Orlando, Florida, and a time-share in Branson, Missouri; the wife chose the Orlando, timeshare. There is no dispute that an Orlando time-share is listed on the husband’s schedule of assets appended to the ante-nuptial agreement; that time-share is not specifically described. The antenuptial agreement provides that, “[a]fter their marriage, each party shall keep and retain sole ownership and control of all property, real or personal, now owned or hereafter acquired by such party.” The husband testified that he owned an Orlando timeshare before the marriage, and he did not indicate that he had sold that property. However, the wife listed an Orlando timeshare at Blue Tree Resort as jointly held property on one of her trial exhibits. Although she testified that she was not seeking either the Orlando or the Branson time-share, the wife is correct in arguing that the trial court was free to divide the parties’ assets in the manner it considered equitable. See Grimsley, 545 So.2d at 77 (stating that a trial court “has the power to use any reasonable means to effect a just distribution”). In light of the conflict in the evidence as to whether the Orlando time-share was a jointly held asset or was the same propei’ty owned by the husband before the marriage, the trial court was free to determine that the Orlando timeshare awarded.to the wife was not the one listed in the antenuptial agreement. We therefore cannot reverse the trial court’s judgment on the basis that it awarded the wife the Orlando time-share covered by the antenuptial agreement.
The husband argues that the trial court also erred in awarding the wife $60,000 representing her interest in the husband’s Wachovia account, which the husband states is his separate property under the agreement. The wife, however, *1219 argues that the account was a joint account as evidenced by the husband’s own testimony that the wife had written cheeks on a Wachovia account. Evidence of two Wachovia accounts appears in the exhibits. In the testimony, neither Wachovia account is identified by number or in any other manner; the parties do refer to the husband’s business account at times. The account from which the wife withdrew funds is the parties’ joint account. A Wa-chovia account containing over $126,000 is the joint account of the husband and Karin D. Heinzelmann, his daughter. In fact, the wife’s trial exhibit listing the parties’ various jointly and separately owned assets indicates that the $126,000 Wachovia account is the husband’s property.
In response to the husband’s post-judgment motion arguing that the trial court improperly awarded the wife a portion of the $126,000 Wachovia account, the trial court stated that it had found that “the funds of that account were used in the furtherance of the marriage and, therefore, not subject to the antenuptial agreement.” Although such a finding could, at the trial court’s discretion, result in the determination that the account should be included as marital property subject to division pursuant to Ala.Code 1975, § 30-2-51 (a),[1] which permits a trial court to consider property acquired before the marriage or by gift or inheritance if it was used for the common benefit of the parties, see Ex parte Durbin, 818 So.2d 404, 408 (Ala.2001); Ex parte Drummond, 785 So.2d 358, 362 (Ala.2000); and Bushnell v. Bushnell, 713 So.2d 962, 964 (Ala.Civ.App.1997), it would not prevent the account from remaining the separate property of the husband under the antenuptial agreement, which provides that property owned solely by the either party, whether it was in existence at the time of the execution of the agreement or was acquired during the marriage, remains that party’s sole property. The antenuptial agreement does not contain a provision similar to that in § 30-2-51 (a) making property used for the benefit of the marriage marital property. Thus, the trial court’s division of the funds in the husband’s Wachovia account[2] was in contravention of the antenuptial agreement and must be reversed. See McGiffert v. McGiffert, 627 So.2d 972, 977 (Ala.Civ.App.1993) (holding that a tidal court may not dispose of property covered by an antenuptial agreement in any way but that prescribed by the agreement).
The husband’s next argument is that the trial court erred by awarding the *1220 wife a larger portion than him of the parties’ jointly owned property, which he says resulted from the trial court’s improper consideration of the property the husband retained by virtue of the antenuptial agreement. The husband relies on Ex parte LaMoreaux, 845 So.2d 801, 806 (Ala.2002), in which the supreme court reversed a trial court’s judgment dividing the parties’ marital property because the trial court had improperly considered the value of the husband’s gifted stock in contravention of Ala. Code 1975, § 30-2-51 (a). According to Ex parte LaMoreaux, a trial court fashioning a division of marital property may not consider at all the value of separate property owned before the marriage or acquired by inheritance or gift if it was not used for the common benefit of the parties. Ex parte LaMoreaux, 845 So.2d at 806; see also Hull v. Hull, 887 So.2d 904, 909 (Ala.Civ.App.2004). Thus, the husband argues, the trial court’s division of the parties’ jointly held property is inequitable.
The parties’ joint assets consisted of certain vehicles, the marital residence at Jubilee Point and its furnishings, and the condominium at the Royal Beach Racquet Club. The Jubilee Point house was worth $650,000 according to the husband; the wife estimated its value to be $500,000. The property has an outstanding mortgage of $296,000. The furnishings in the house are worth approximately $20,000. According to an exhibit in the record, the husband believed that the condominium was worth approximately $120,000, with a $32,000 mortgage balance, while the wife believed it to be worth $90,000, with a $25,000 mortgage balance. The wife was awarded two vehicles;[3] the Jubilee Point house, valued at most at $650,000 with an associated indebtedness of $296,000; and the furnishings in the house, worth approximately $20,000. The husband was awarded the condominium, worth at most $120,000, with an indebtedness of as much as $32,000. In addition, the parties were each awarded one of the two time-shares owned by the parties; the wife chose the Orlando time-share, which she valued at $20,000, and the husband was then awarded the Branson time-share, which was valued by the wife at $26,000. Thus, the wife’s award, not counting the value of the vehicles, is approximately $394,000. The husband, however, was awarded only two assets, which, once the mortgage on the condominium is deducted, are valued at $114,000. The husband, then, was awarded 22.4% of the marital assets.
Unlike the trial court in LaMoreaux, which clearly indicated that it had considered the husband’s gift property, LaMo-reaux, 845 So.2d at 803, the trial court in the present case did not make the basis for its award of the bulk of the marital property to the wife apparent. Even without a clear indication from the trial court that it did consider property that should have been disregarded, we could conclude, in light of the large disparity between the awards to the parties, that the trial court considered the husband’s separate property in fashioning the division of the marital property, and we could further conclude that the division of property is so unsupported by the evidence as to be plainly and palpably wrong. See Hull, 887 So.2d at 909 (holding that, despite the fact that the *1221 trial court did not expressly state that it considered the wife’s inheritance property when fashioning its division of property, the property division was so unsupported by the evidence as to be plainly and palpably wrong).
However, the husband did admit to committing adultery in the summer of 2002 and has maintained a relationship with the same woman since the parties’ separation. The wife complained that she suspected the husband of having relationships with other women during the marriage based upon proof of late-night telephone calls and frequent contact with the other women. The trial court may well have considered the husband’s admitted infidelity in fashioning the property division; a trial court may consider fault when making a property division, even if it does not grant a fault-based divorce. Ex parte Drummond, 785 So.2d at 363; TenEyck v. TenEyck, 885 So.2d 146, 155 (Ala.Civ.App.2003). In addition, the husband’s current and future financial prospects are much better than those of the wife, who has been unemployed for seven years and has no retirement or investment accounts. See TenEyck, 885 So.2d at 154; Lutz, 485 So.2d at 1176. Thus, the trial court’s decision to award the husband a significantly smaller portion of the parties’ marital estate is supported by one view of the evidence, and, ever mindful of our standard of review, we will not substitute our judgment for that of the trial court. Ex parte Drummond, 785 So.2d at 360-61; TenEyck, 885 So.2d at 155.
The husband’s final argument concerns his allegation that the wife forged his name to a mortgage-satisfaction document and then converted the proceeds of the mortgage payoff by writing a check to herself from the account into which she had deposited the mortgage payoff. We note that the wife testified that she had been given permission to sign the husband’s name on the mortgage-satisfaction document and that she had used the money to pay for roofing work performed on the marital residence. In contravention of Rule 28(a)(10), Ala. R.App. P., the husband cites no legal authority regarding his claim that the trial court should have awarded him the money that the wife allegedly converted. Thus, we will not consider the husband’s argument on this point. See Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala.Civ.App.1996).
In conclusion, we affirm the trial court’s judgment insofar as it determined that the antenuptial agreement was valid and enforceable. We likewise affirm the trial court’s failure to award the wife alimony because such an award is precluded by the antenuptial agreement. We reverse the trial court’s judgment insofar as it awarded the wife $60,000 from the husband’s Wachovia account, which is his separate property under the antenuptial agreement. We affirm the trial court’s judgment dividing the parties’ property in all other respects.
As noted above, the wife’s request for an attorney fee on appeal is denied.
APPEAL — AFFIRMED.
CROSS-APPEAL — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN, BRYAN, and MOORE, JJ., concur.
THOMPSON, P.J., concurs in the result, without wilting.

. Section 30-2-51(a) reads:
“If either spouse has no separate estate or if it is insufficient for the maintenance of a spouse, the judge, upon granting a divorce, at his or her discretion, may order to a spouse an allowance out of the estate of the other spouse, taking into consideration the value thereof and the condition of the spouse’s family. Notwithstanding the foregoing, the judge may not take into consideration any property acquired prior to the marriage of the parties or by inheritance or gift unless the judge finds from the evidence that property, or income produced by the property, has been used regularly for the common benefit of the parties during their marriage.”

. We note that the trial court’s failure to divide the funds in the parties' joint Wachovia account, if it is still in existence, does not affect the finality of the judgment because, "when a trial court does not make specific disposition of an asset in a divorce [judgment], the parties are left in the same position relative to that asset as they were in before the divorce.” Ex parte Davis, 495 So.2d 672, 673 (Ala.1986); McGuire v. Horton, 586 So.2d 9, 9 (Ala.Civ.App.1991); Lacy v. Lacy, 403 So.2d 251, 254 (Ala.Civ.App. 1981); and Miller v. Miller, 391 So.2d 119, 120 (Ala.Civ.App.1980). The failure to divide each item of property does not render void an otherwise proper divorce judgment. Miller, 391 So.2d at 120.

. The wife's exhibit listing the parties’ property indicates that the 1993 Mazda Miata vehicle she was awarded is worth $4,000. The 1998 Ford Explorer sport-utility vehicle she was also awarded is not mentioned in the exhibit, and no value was assigned to that vehicle. The husband was awarded his Alfa Romeo, which was his separate property under the antenuptial agreement, and a 2000 or 2001 Dodge Dakota pickup truck; no values were assigned to either of those vehicles.