MURDOCK, Justice.
Rosemary Posey Brown (“the wife”) petitioned this Court for a writ of certiorari after the Court of Civil Appeals affirmed in part and reversed in part a judgment divorcing her from James Earl Brown (“the husband”). We granted certiorari review to determine whether the Court of Civil Appeals erred in affirming that part of the divorce judgment holding that the parties’ antenuptial agreement was valid and enforceable. Brown v. Brown, 26 So.3d 1210 (Ala.Civ.App.2007). After reviewing the record in this case, we affirm.

Facts and Procedural History

The parties were married on August 10, 1996. At that time, the husband was approximately 64 years old and the wife was approximately 45 years old. Each party had been married previously, and each party had adult children from those prior marriages. The husband was retired, with substantial income from military-retirement benefits and real-estate investments. The wife was working as a real-estate agent, but her income and earning capacity are not disclosed in the record. A few weeks before the wedding, the wife quit her job at the husband’s request.
Shortly before the parties’ wedding, the husband had his attorney prepare an ante-nuptial agreement. The copy of the ante-nuptial agreement admitted into evidence shows that the document was signed by the husband on August 8, 1996, and by the wife on August 9, 1996; both signatures were witnessed and notarized, apparently by different witnesses and different notaries. The wife admits that she signed the antenuptial agreement, but the circumstances surrounding her execution of the document are disputed.
The husband testified that he gave the antenuptial agreement, which he had already signed, to the wife on August 8 or 9, together with a check in the amount of $150; the check was to pay the wife’s lawyer to review the document. The husband testified that the wife returned the antenuptial agreement to him on August 9, signed by her, with her signature witnessed and notarized. The husband also testified that he was not present when the wife signed the document and that he has no personal knowledge of whether she consulted with her attorney before she signed it.
The wife testified that the husband gave her the antenuptial agreement “midday” *1224 on August 9 and that she tried repeatedly to contact her lawyer but that he was too busy to “work her in” that day.[1] The wife testified that she signed the antenuptial agreement, but she does not remember having her signature witnessed and notarized. The wife did not, however, offer any explanation for the fact that her signature on the document is witnessed and notarized, other than to agree with the suggestion that “somebody else” had her signature notarized. The wife also testified that the $150 check from the husband was not to pay her attorney to review the document but possibly to reimburse her for flowers for the wedding.
The copy of the antenuptial agreement admitted in evidence contains the following provision:
“Posey [the wife] declares that she fully understands the terms and provisions of this Agreement, that she has been fully informed of her legal rights and liabilities, that she believes that the provisions of the Agreement are fair, just and reasonable and that she signs this Agreement freely and voluntarily, acting under the advice of independent legal counsel.”
(Emphasis added.)
When asked about the foregoing representation, the wife denied that the representation was true and testified that she did not remember reading the antenuptial agreement. She also testified that “I didn’t say any of that stuff’ and that “[t]hey made that up. I didn’t say it.” The wife testified that she signed the ante-nuptial agreement without reading it because the husband told her that there would be no wedding unless she signed the agreement. The husband testified that he did not tell the wife that there would be no wedding if the wife refused to sign the antenuptial agreement. The wife testified that she felt under a great deal of pressure to sign the antenuptial agreement because the wedding arrangements had already been made and she was expecting many guests to attend the wedding.
The antenuptial agreement included a schedule of the assets owned by each party. The husband’s schedule of assets included 26 parcels of real estate and 6 real-estate-related accounts receivable. Although the schedule does not show the value of any of the husband’s assets, there is evidence in the record indicating that the wife knew before the marriage that the husband had extensive property holdings and that his income was sufficient to allow the wife to quit working. A separate schedule to the antenuptial agreement shows the wife’s separate assets, which included a residence and a checking account; no value is given for either of those assets.[2]
At the time of the divorce, the husband’s separate property included real estate and real-estate-related accounts receivable valued at approximately $2 million, plus a checking account with a balance of approximately $126,000. The facts before us do not disclose the value or composition of the wife’s separate estate at the time of the divorce. There is evidence in the record indicating that, at the time of the divorce, *1225 the parties’ jointly owned assets had a net value, after encumbrances, in excess of $500,000.
The husband filed the present action in December 2003, seeking a divorce from the wife. After a trial at which ore tenus evidence was presented, the trial court entered a judgment divorcing the parties, finding the antenuptial agreement to be valid and enforceable, dividing the parties’ property, and awarding the wife alimony. In response to the husband’s postjudgment motion, the trial court amended its judgment to deny the wife alimony based on provisions in the antenuptial agreement. The wife appealed; the husband cross-appealed.
The Court of Civil Appeals affirmed the trial court’s judgment to the extent that it held the antenuptial agreement to be valid and denied alimony to the wife based on the terms of the antenuptial agreement. The Court of Civil Appeals reversed the trial court’s judgment to the extent that it awarded the wife a portion of the funds in a bank account belonging to the husband only. The wife filed a petition for a writ of certiorari asserting that the judgment of the Court of Civil Appeals, insofar as it upholds the antenuptial agreement, conflicts with existing precedent.

Standard of Review

“A divorce judgment based on ore tenus evidence is presumed correct, and such a judgment will be reversed only when it is unsupported by the evidence so as to be plainly and palpably wrong.
“It is also well established that, in the absence of specific findings of fact, an appellate court will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.”
Clements v. Clements, 990 So.2d 383, 389-90 (Ala.Civ.App.2007) (citations omitted).
“ ‘[I]n ore tenus proceedings the trial court is the sole judge of the facts and of the credibility of witnesses,’ and ‘we are required to review the evidence in a light most favorable to the prevailing parties],... Driver v. Hice, 618 So.2d 129, 131 (Ala.Civ.App.1993); see also First Health, Inc. v. Blanton, 585 So.2d 1331, 1332 (Ala.1991) (reviewing evidence in the light most favorable to the prevailing party where the trial court’s judgment was entered after an ore tenus proceeding).”
Architectura, Inc. v. Miller, 769 So.2d 330, 332 (Ala.Civ.App.2000).
“ ‘ “The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.” The rule applies to “disputed issues of fact,” whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence.’ ”
Yeager v. Lucy, 998 So.2d 460 (Ala.2008) (quoting Reed v. Board of Trs. for Alabama State Univ., 778 So.2d 791, 795 (Ala.2000)).
We also note that “ ‘[i]t is well settled that an appellant has the burden of presenting a record containing sufficient evidence to show error by the trial court.’ ” Wilcoxen v. Wilcoxen, 907 So.2d 447, 450 (Ala.Civ.App.2005) (quoting Leeth v. Jim Walter Homes, Inc., 789 So.2d 243, 246 (Ala.Civ.App.2000)).

Analysis

Alabama law has long held that antenuptial agreements are generally enforceable in equity, but “[bjecause of the confidential relationship of the two parties, such contracts are scrutinized by the courts to determine their justice and rea *1226 sonableness.” Allison v. Stevens, 269 Ala. 288, 291, 112 So.2d 451, 453 (1959). See also Ruzic v. Ruzic, 549 So.2d 72 (Ala.1989); Ala.Code 1975, § 30-4-9 (“The husband and wife may contract -with each other, but all contracts into which they may enter are subject to the rules of law as to contracts by and between persons standing in confidential relations.”).
In Allison, this Court stated that the proponent of an antenuptial agreement has
“the burden of showing that the consideration was adequate and that the entii’e transaction was fair, just and equitable from the [other party’s] point of view or that the agreement was freely and voluntarily entered into by the [other party] with competent independent advice and full knowledge of [the other party’s] interest in the estate and its approximate value.”
269 Ala. at 291, 112 So.2d at 452 (emphasis added). This is the same test articulated in Barnhill v. Barnhill, 386 So.2d 749, 751 (Ala.Civ.App.1980) (citing Allison, 269 Ala. at 291, 112 So.2d at 453), one of the principal authorities relied on by the Court of Civil Appeals in the present case.[3]
The wife contends that the opinion of the Court of Civil Appeals is in conflict with the foregoing legal principles and that the antenuptial agreement is invalid and unenforceable because, she says, (1) she did not read the agreement before she signed it, (2) she did not have a reasonable opportunity to seek independent advice before she signed the agreement, (3) she was forced to sign the agreement in a coercive atmosphere, and (4) the husband did not fully disclose the values of the assets he listed in a schedule to the antenuptial agreement.
After reviewing the record on appeal, we conclude that the Court of Civil Appeals reached the correct result in the present case, although we do not approve of all the reasoning and analysis set forth in their opinion. As a threshold matter, we note that the Court of Civil Appeals begins its analysis by directly addressing only the first Allison/Bamhill test, i.e., whether the consideration was adequate and the entire transaction fair, just, and equitable, and that it then proceeds to discuss whether the fairness and equity elements of that test were satisfied solely by reference to whether part of the second Allison/Bam-hill test, i.e., whether the agreement was entered into freely and voluntarily, was proven. Broivn, 26 So.3d at 1213. Although it may be true that elements of the second Allison/Bamhill test can serve as evidence that the antenuptial agreement is fair, see Woolwine v. Woolwine, 519 So.2d 1347, 1350 (Ala.Civ.App.1987), we reemphasize that the two tests are separate tests. This opinion addresses the second Allison/Bamhill test directly, because that test is the subject of the wife’s brief to this Court.
Under the second Allison/Bamhill test, the husband was required to prove (1) that the wife signed the antenuptial agreement freely and voluntarily, (2) that the wife obtained competent independent advice before she signed the agreement, and (3) that, despite the absence of values on the husband’s schedule of assets, the wife knew the approximate value of the husband’s separate estate. Allison, 269 Ala. at 291, 112 So.2d at 452. In the present case, the trial court heard conflicting ore tenus testimony and received documentary evidence, including the antenuptial agreement itself, and it found the antenuptial agreement to be valid and enforceable. This *1227 finding is presumed correct and the trial court’s judgment based on that finding will not be reversed unless the wife presents evidence establishing that the judgment “is unsupported by the evidence so as to be plainly and palpably wrong.” Clements, 990 So.2d at 389.
The wife has not established that the trial court erred with respect to the application of the second Allison/Barnhill test in light of the conflicting accounts as to the events surrounding the wife’s execution of the antenuptial agreement. First, the wife’s testimony at trial — that she signed the antenuptial agreement only under duress and that she did not consult with her attorney before she signed it— conflicts with the wife’s representation in the antenuptial agreement — that she signed the document “freely and voluntarily, acting under the advice of independent legal counsel” — and with parts of the husband’s testimony. The trial court, as the sole judge of the credibility of the witnesses, was free to believe what the husband said at trial and what the wife said in the antenuptial agreement and to disbelieve what the wife said at trial.[4] The trial court’s judgment is also consistent with the holding in cases such as Power Equipment Co. v. First Alabama Bank, 585 So.2d 1291, 1296 (Ala.1991), that “ordinarily when a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract and will be bound thereby.” Further, we note that the wife was not unsophisticated or illiterate but that before the marriage she had been employed as a real-estate professional. There was no evidence in the record indicating that, before the present action was filed, the wife ever objected that the representations in the antenuptial agreement were untrue or complained about the terms of the agreement.[5] Accordingly, we cannot conclude that the trial court erred with respect to the first element of the second Allison/Barnhill test.
As to the second element of the second Allison/Bamhill test, the Court of Civil Appeals’ opinion states that “[t]he wife’s failure to secure independent legal advice ..., while certainly regrettable, is not alone sufficient to void the agreement.” 26 So.3d at 1215. The opinion also states that “[t]he trial court could have determined that the wife was aware of the import of the antenuptial agreement and that her decision to sign it without reading it negated any need for her to seek independent legal advice regarding the agreement.” 26 So.3d at 1217. Those conclusions are unnecessary in light of the conflicting evidence presented to the trial court as to whether the wife did consult with counsel, and the trial court’s finding that the antenuptial agreement was valid. *1228 Specifically, as noted, the wife represented in the antenuptial agreement itself that she was signing the agreement “freely and voluntarily, acting under the advice of independent legal counsel.” The husband testified (1) that the wife left his presence with a document executed by him and a check with which to pay her attorney to review the document and (2) that the wife later returned with a document signed by the wife, whose signature was witnessed and notarized. Because the trial court could have found the wife’s testimony not to be credible, the wife has not demonstrated that the trial court erred in finding that the antenuptial agreement was valid.
We decline to address the third element of the second Allison/Bamhill test (knowledge of the other spouse’s separate estate) because the wife’s brief places almost no reliance on it. Further, the opinion of the Court of Civil Appeals stated that “the record evidence supports a conclusion that the wife was aware of the general extent of the husband’s assets at the time of the execution of the antenuptial agreement.” 26 So.3d at 1215. Our review of the record leads this Court to the same conclusion.
Based on the foregoing, the judgment of the Court of Civil Appeals is affirmed.
AFFIRMED.
COBB, C.J., and LYONS and STUART, JJ., concur.
BOLIN, J., concurs in the result.

. The wife does not identify the attorney whom she testified she attempted to contact.

. At the time of the divorce, the husband still owned, in his own name, approximately 12 of the 26 properties listed on his schedule of assets. There is evidence indicating that the proceeds from the sale of some of the husband’s separate assets were deposited into joint accounts or used to purchase property owned jointly by the husband and the wife. The facts before us do not disclose whether, at the time of the divorce, the wife still owned her separate residence (which was not used as the marital residence).

. Barnhill has been applied with approval by this Court. See Tibbs v. Anderson, 580 So.2d 1337 (Ala.1991); Ex parte Walters, 580 So.2d 1352 (Ala.1991).

. With regard to the wife's credibility, we note that there was evidence indicating that, after the parties separated, the wife diverted to her own use approximately $11,000 of proceeds from the sale of properly secured by a note and mortgage that was her husband’s separate property. According to the evidence, the wife signed the husband’s name to a mortgage release (although she claimed that she was authorized to do so) and had her friend falsely notarize the husband's signature when the husband did not sign the document in the notary's presence.

. In her brief to this Court, the wife cites Ex parte Williams, 617 So.2d 1032 (Ala.1992), for the proposition that an antenuptial agreement can be invalidated when it is executed under duress. Williams is distinguishable from the present case because it involved a summary judgment, rather than a trial at which ore tenus evidence was presented, and because the wife in Williams was 24 years old and pregnant out of wedlock at the time she was told that there would be no wedding if she did not sign the antenuptial agreement.