592 So.2d 212 (1991)
Gwen GOODWIN
v.
Richard Scott GOODWIN and John Stephen Goodwin.
1901250.
Supreme Court of Alabama.
December 20, 1991.
*213 J. Fred Wood, Jr. and Terry McElheny of Dominick, Fletcher, Yeilding, Wood & Lloyd, P.A., Birmingham, for appellant.
Ralph H. Yeilding of Bradley, Arant, Rose & White, Birmingham, for appellees.
PER CURIAM.
The issue presented in this case is whether the trial court erred in entering a summary judgment for the defendants in a suit to set aside deeds. The case involves the interpretation of an antenuptial agreement in which the wife, pursuant to Alabama Code 1975, § 43-8-72, waived certain rights (that section allows a surviving spouse to waive homestead rights by written contract), and its effect on the provisions of § 6-10-3 (which declares that a conveyance of the homestead of a married person is invalid in the absence of the voluntary signature and assent of the spouse).
After the death of her husband, John W. Goodwin, Gwen Goodwin sued to set aside the deeds to two lots on which their homestead property is located, which John Goodwin gave to his sons, Richard Scott Goodwin and John Stephen Goodwin, without her voluntary signature or assent. The trial court interpreted an antenuptial agreement between John and Gwen Goodwin as being a waiver of her right to dissent from a conveyance, and entered summary judgment on behalf of defendants. Mrs. Goodwin appeals. We reverse and remand.
A summary judgment is proper only when the trial court determines 1) that there is no genuine issue of material fact and 2) that the moving party is entitled to a judgment as a matter of law. Rule 56, A.R.Civ.P. Tripp v. Humana, Inc., 474 So.2d 88 (Ala.1985). Because there was no factual dispute below, the issue addressed by the trial court was whether Mrs. Goodwin had waived her legal right to dissent from a conveyance by executing the antenuptial agreement.
It is undisputed that on May 19, 1983, John W. Goodwin and Gwen T. Doughty executed an antenuptial agreement in contemplation of marriage. Both were represented by competent counsel. The agreement states that both parties had been married before and had children from their earlier marriages. Also, it indicates that each had acquired separate estates and desired to make provision for his or her respective children. The agreement recites that the parties had fully disclosed to each other the content and extent of their separate estates.
Under the terms of the antenuptial agreement, Mrs. Goodwin was to have a life estate in the homestead property. Paragraph 2 reads as follows:
"2. It is contemplated by the parties hereto that, subsequent to the marriage, the parties will live together as man and wife in a house presently owned by John W. Goodwin, or in another house which may be later acquired by John W. Goodwin. In the event that John W. Goodwin shall predecease Gwendolin T. Doughty, and at the time of such death they shall be living together as man and wife in a house owned by John W. Goodwin, then in such event, Gwendolin T. Doughty shall have the right to continue living in said house and shall have the right to the exclusive use of all furniture and furnishings therein which are owned by John W. Goodwin until her death, remarriage, or abandonment of the premises, provided however, that during such occupancy, Gwendolin T. Doughty shall pay taxes, insurance and provide for adequate maintenance of such house. Gwendolin T. Doughty shall have no other or greater rights in and to said house other than those herein specifically provided for."
Paragraph 3 of the agreement gives a family heirloom diamond ring to Mrs. Goodwin for her life, with provisions that the ring be *214 disposed of by Mr. Goodwin's will. Paragraph 4 is entitled "Waiver of Spousal Rights pursuant to § 43-8-72...."
The parties were married sometime after the antenuptial agreement was executed and lived together until the death of Mr. Goodwin on November 3, 1990. On June 21, 1990, Mr. Goodwin executed deeds to two lots, conveying them to his sons Richard and John. The house in which the Goodwins resided is located on one of these lots. It is not disputed that Mrs. Goodwin did not sign or assent to the conveyance.
On November 7, 1991, Mrs. Goodwin filed a complaint to set aside the deeds to the Goodwin sons. She contended in her complaint that the deeds were given without her assent and were therefore void under Ala.Code 1975, § 6-10-3.
The trial court held that Mrs. Goodwin, by signing the agreement stating that the parties waived rights "which he or she may acquire in the separately owned property of the other by reason of the marriage" had waived her right to dissent under § 6-10-3. We do not agree.
Since the Constitution of 1868, the conveyance of the homestead, without the voluntary signature and assent of the wife, has been inoperative. Art. X, § 205, of the Constitution of Alabama 1901, provides that the "alienation of said homestead by the owner thereof, if a married man, shall not be valid without the voluntary signature and assent of the wife to the same." What is now § 6-10-3 has been a part of the Code of Alabama in some form since 1876:
"§ 6-10-3. SameAlienation by married person.
"No mortgage, deed or other conveyance of the homestead by a married person shall be valid without the voluntary signature and assent of the husband or wife, which must be shown by his or her examination before an officer authorized by law to take acknowledgments of deeds, and the certificate of such officer upon, or attached to, such mortgage, deed or other conveyance, which certificate must be substantially in the form of acknowledgment for individuals prescribed by section 35-4-29."
The public policy of Alabama strongly favors setting aside the homestead for the surviving spouse.
It is clear from the wording of Paragraph 2 of the antenuptial agreement that it was the intention of these parties when they signed this antenuptial agreement that Mrs. Goodwin have a life estate in the homestead property. It is equally clear that it was not the intention of the parties in signing this antenuptial agreement that Mrs. Goodwin would waive her right under § 6-10-3 to dissent from a conveyance of the homestead.
The trial court reasoned that because one does not obtain a spouse's right to dissent from a conveyance of the homestead until one becomes a spouse, Mrs. Goodwin meant to waive her right to consent to the conveyance of the homestead by signing the antenuptial agreement. We can not agree that this is what the two intended. Why would Mrs. Goodwin waive, in paragraph 4, the right to continue to live in the homestead specifically set aside to her in paragraph 2?
Furthermore, the waiver of spousal rights under paragraph 4 specifically refers to the waiver of spousal rights as being given "[p]ursuant to the authority of Section 43-8-72 of the Code of Alabama, 1975, as amended (the `Code'), and existing Alabama case law." Section 43-8-72 reads as follows:
§ 43-8-72. Waiver of right to elect and of other rights.
"The right of election of a surviving spouse and the rights of the surviving spouse to homestead allowance, exempt property and family allowance, or any of them, may be waived, wholly or partially, before or after marriage, by a written contract, agreement, or a waiver signed by the party waiving after fair disclosure. Unless it provides to the contrary, a waiver of `all rights' (or equivalent language) in the property or estate of a present or prospective spouse or a complete property settlement entered into after or in anticipation of separation or divorce is a waiver of all rights to *215 elective share, homestead allowance, exempt property and family allowance by each spouse in the property of the other at death and a renunciation by each of all benefits which would otherwise pass to him from the other by intestate succession or by virtue of the provisions of any will executed before the waiver or property settlement."
By virtue of § 43-8-72, Mrs. Goodwin was waiving only certain rights available to the surviving spouse. The rights of a "surviving spouse" arise only upon the death of the other spouse. Black's Law Dictionary (5th ed. 1979). In fact, the statute states that the waiver is of rights "at death." By executing the antenuptial agreement, Mrs. Goodwin was not waiving her rights as a wife during the lifetime of Mr. Goodwin. She was waiving her rights to the "elective share, homestead allowance, exempt property and family allowance," which would be hers ordinarily at the death of Mr. Goodwin.
After citing a waiver of spousal rights under § 43-8-72, paragraph 4 of the antenuptial agreement goes on to say that the parties are waiving "the rights of either to claim, as the surviving spouse, under Title 43, Chapter 8 of the Code, the Law of Intestate Succession and Wills." However, nowhere is there a reference to a waiver of rights during the lifetime of the parties (other than claims of alimony in case of divorce) and nowhere is there a reference to a waiver of any rights held pursuant to § 6-10-3.
For the reasons stated above, the judgment of the trial court is due to be reversed and the cause remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
MADDOX and INGRAM, JJ., dissent.
MADDOX, Justice (dissenting).
The majority, applying what I believe are equitable principles rather than legal principles, reverses a finding by the trial judge, who made a determination that a wife had waived her homestead rights by executing an antenuptial agreement.[1]
I have examined the subject antenuptial agreement and I conclude that the wife waived her right to assent to the conveyance by executing the antenuptial agreement. I would affirm the judgment of the trial court.[2]
The facts are largely undisputed and most are set out in the majority opinion. On May 19, 1983, John W. Goodwin and Gwen T. Doughty executed an antenuptial agreement. It appears that both were represented by competent counsel and that Ms. Doughty's attorney(s) actually drafted the agreement.
I do not find the agreement to be ambiguous. The introductory section of the agreement states that both Mr. Goodwin and Ms. Doughty had been married before and had children from their earlier marriages. Also, it stated that each was financially secure and wished his or her respective children to inherit only from their individual estates. Further, both Mr. Goodwin and Ms. Doughty had discussed their respective financial positions with the other, *216 and each desired that no gain accrue to the other as a result of their marriage.
The antenuptial agreement did contain two provisions that can be construed as affecting the separate estates of the parties. In paragraph three of the antenuptial agreement, Mr. Goodwin gave Ms. Doughty a life estate in a family heirloom wedding ring; Ms. Doughty was given the right to wear the ring for life, and upon her death the ring was to pass according to Mr. Goodwin's will. Additionally, in paragraph two, it was agreed that in the event "at the time of [Mr. Goodwin's death] they [were] living together as man and wife in a house owned by John W. Goodwin," Ms. Doughty would get an estate for years in that house.
In paragraph four of the agreement, both parties specifically waived their spousal rights in their separately owned estates. It is the interplay of paragraph four with paragraph two and the provisions of Ala. Code, 1975, § 6-10-3, relating to the right of a spouse to assent to a conveyance of the homestead, that is disputed before this Court.
I would hold, as did the trial court, that a spouse can waive his or her legal rights to assent to a homestead conveyance. Ala. Code 1975, § 6-10-120, states that "Any person, by an instrument in writing, may waive his or her right to an exemption in any property exempt from levy and sale under execution or other process." Section 6-10-122 states that "as to the homestead, the waiver must be by a separate instrument in writing, subscribed by the party making the same and attested by one witness." Thus, it is clear that one may waive one's right to assent to a conveyance of the homestead if the requirements of § 6-10-122 are met.
Mrs. Goodwin argues that she did not waive her right to assent under § 6-10-3 by the separate, written, and attested antenuptial agreement. The clear language of the antenuptial agreement convinces me that Mrs. Goodwin did waive her right to assent to the conveyance of the homestead. Further, it is equally clear that the antenuptial agreement was a separate, written, and attested instrument, as contemplated by § 6-10-122.
Paragraph four of the antenuptial agreement says:
"[E]ach of the parties waives, discharges, and releases any and all claims and rights, actual, inchoate, or contingent, in law and equity, which he or she may acquire in the separately owned property of the other by reason of their marriage, including but not limited to:

"(a) The right of either to claim, as surviving spouse of the other, under the law of Intestate Succession and Wills, ... This shall include, but not be limited to, rights or claims traditionally referred to as dissent, dower, curtesy, or any statutory substitutes therefor.

"(b) The right of a surviving spouse to take an intestate share in the event the predeceasing spouse died intestate....
"(c) The right of a surviving spouse to take an elective share....
"(d) The right of a surviving spouse to take an intestate share in the event the predeceasing spouse dies testate but failed to provide ... for his surviving spouse....
"(e) The right of a surviving spouse to a homestead allowance....
"(f) The right of a surviving spouse to take exempt property....
"(g) The right of a surviving spouse to a family allowance....
"(h) The right to claim alimony, whether in gross or ... periodic, or support in the event of divorce or separation.
"(i) The right to the disposition of the remains of the first of them to die, including the right to direct the funeral and burial or other means of disposal of the remains."
Of particular importance is the phrase "which he or she may acquire in the separately owned property of the other by reason of the marriage." One does not obtain a spouse's right to assent to a conveyance of the homestead until one becomes a spouse. Thus, the right granted by § 6-10-3 would be a right "acquired by reason of the marriage." Therefore, I would hold *217 that the right was clearly waived by paragraph four of the antenuptial agreement.
Mrs. Goodwin stresses that the repetition of the phrase "surviving spouse" in paragraph four has significance. She argues that the only rights she waived in the antenuptial agreement were those rights accruing to her at Mr. Goodwin's death.
This argument ignores the clear language of the agreement immediately before the listing of rights waived. This phrase reads, "including but not limited to." The clear import of this phrase is that the list was exemplary only.
Additionally, this argument ignores paragraph four, sections (h) and (i), which waive rights not specifically dependent on "surviving spouse" status.
Because I would find that Mrs. Goodwin clearly waived her rights under Ala.Code 1975, § 6-10-3, to assent to a conveyance of the homestead, I conclude that the equally clear language of paragraph two of the antenuptial agreement supports the judgment. Paragraph two states:
"It is contemplated by the parties hereto that, subsequent to the marriage, the parties will live together as man and wife in a house presently owned by John W. Goodwin.... In the event that John W. Goodwin shall predecease Gwendolin T. Doughty [Mrs. Goodwin], and at the time of such death they shall be living together as man and wife in a house owned by John W. Goodwin, then in such event, Gwendolin T. Doughty shall have the right to continue living in said house and shall have the right to exclusive use of all furniture and furnishings therein which are owned by John W. Goodwin until her death, remarriage, or abandonment of the premises.... Gwendolin T. Doughty shall have no other or greater rights in and to said house than those herein specifically provided for."

The clear import of paragraph two is that Mrs. Goodwin would obtain an estate for years (or life, depending on whether she remarried or abandoned the house) if: 1) Mr. Goodwin predeceased her, 2) the two of them were living together as man and wife at the time of Mr. Goodwin's death, and, most importantly, 3) Mr. Goodwin actually owned the house in which they were living at the time of his death. Because Mr. Goodwin had conveyed to his sons the lot and house that he and Mrs. Goodwin were living together in at the time of his death to his sons before his death, he did not own the house at his death.
The final sentence of paragraph two must be analyzed also. Mrs. Goodwin was entitled to no greater rights in the house than were granted by paragraph two. Therefore, because Mr. Goodwin did not own the house he and Mrs. Goodwin were living in at the time of his death, Mrs. Goodwin took no rights to the house.
Because I would hold that Mrs. Goodwin waived her right to assent to the conveyance of the homestead in question, I will now address her argument that the antenuptial agreement was not supported by adequate consideration.
Mrs. Goodwin argues that if this Court finds that she waived her right to assent to the conveyance of the homestead, there remains a genuine issue of material fact as to whether the antenuptial agreement was supported by adequate consideration. Having examined the evidence in support of the motion for summary judgment, I find that Richard and John S. Goodwin submitted, as part of their requested discovery, a request for an admission that Mrs. Goodwin signed the antenuptial agreement after a full and fair disclosure of the contents. Mrs. Goodwin never responded or objected to this request. Therefore, based on Rule 36(a), Ala.R.Civ.P., the matter is deemed admitted. Daniel v. O.F. Richter & Sons, Inc., 385 So.2d 1308, 1309 (Ala.1980). This admission meets one of the alternative requirements of a valid antenuptial agreement, i.e., that either 1) the consideration be adequate, and the entire transaction fair, just, and equitable; or 2) the agreement be entered into with competent, independent advice from counsel and full knowledge of any interest in the other party's estate, and its approximate value. Mixon v. Mixon, 550 So.2d 999, 1000 (Ala.Civ.App.1989). Clearly the admission *218 admits that Mrs. Goodwin knew of any interest in Mr. Goodwin's estate, and its approximate value. Also, it is undisputed that both were represented by independent counsel. Therefore, I would reject Mrs. Goodwin's lack-of-consideration argument.
Based on the foregoing, I would affirm the trial court's judgment. Because the majority opinion reverses, I dissent.
INGRAM, J., concurs.
NOTES
[1] The issue presented is whether the trial court erred in entering a summary judgment in a suit to set aside a deed. The suit involved the construction of an antenuptial agreement and its effect on a spouse's right to assent to a conveyance of homestead property, in view of Ala. Code, 1975, § 6-10-3, which provides, in pertinent part:

"No mortgage, deed or other conveyance of the homestead by a married person shall be valid without the voluntary signature and assent of the husband or wife...." (Emphasis supplied).
[2] The trial court, in entering the summary judgment, held that "as a matter of law ... when [Mrs. Goodwin] executed the `antenuptial agreement,' she waived her rights as a surviving spouse in the property which was conveyed by the deeds which she is now attempting to set aside."

A secondary issue, whether there was a failure of consideration for the antenuptial contract, was also raised by the wife on appeal, but I find that this issue was waived by the wife's failure in the trial court to answer a request for admission during discovery. See my discussion of this issue later in this opinion.