MOORE, Judge.
Sarah Nelson (“Sarah”) appeals from a summary judgment entered in favor of the estate of Wiley Nelson, Jr. (“the estate”). We affirm.

Procedural Background

This is the second time these parties have been before us. See Nelson v. Estate of Nelson, 10 So.3d 603 (Ala.Civ.App.2008). In Nelson, we stated the following:
“Sarah Nelson (‘the widow’), the widow of Wiley Nelson, Jr. (‘the decedent’), appeals a judgment as a matter of law entered in favor of Albert Foster, Jr., and Jacques Marsh, the decedent’s nephews. We dismiss the appeal.
“On July 13, 2007, the widow filed a petition to remove the administration of the estate of the decedent from the Montgomery Probate Court to the Montgomery Circuit Court, pursuant to § 12-11-41, Ala.Code 1975. Although the circuit court did not enter an order removing the administration of the estate from the probate court, on December 18, 2007, the widow gave notice to the circuit court that she was dissenting from the will and was claiming a ‘spouse’s share.’ On January 22, 2008, Foster and Marsh filed a motion in the circuit court seeking a judgment declaring the validity of a postnuptial agreement that had been entered between the widow and the decedent. They also sought a determination of the validity of an inter vivos transfer of certain property from the decedent to Foster and Marsh. On February 7, 2008, the widow requested a trial by jury.
“The case was called for trial in the circuit court on March 31, 2008, and, at the conclusion of the presentation of Foster and Marsh’s evidence, the circuit court entered a judgment as a matter of law in favor of Foster and Marsh and ‘dismissed [the case,] with prejudice.’ The widow timely filed her notice of appeal to the Alabama Supreme Court; that court transferred the appeal to this *924 court, pursuant to Ala.Code 1975, § 12-2-7(6).”
10 So.3d at 604-05 (footnote omitted). Because the circuit court had failed to remove the matter from the probate court to the circuit court, we concluded that the judgment entered by the circuit court was void for lack of subject-matter jurisdiction. Because a void judgment will not support an appeal, we dismissed Sarah’s appeal. Id. at 605.
After the dismissal of Sarah’s appeal, the circuit court ordered the proceeding regarding the administration of the estate removed from probate court to the circuit court. The estate then moved for a summary judgment, asserting that the post-nuptial agreement entered into by Sarah and Wiley Nelson, Jr. (“Wiley”), approximately eight months after they married was valid. In support of that motion, the estate submitted a copy of the postnuptial agreement, purportedly executed by Sarah and Wiley on April 13, 1985; an affidavit from Wayne Sabel, the attorney who had drafted the postnuptial agreement and who had purportedly witnessed Sarah and Wiley execute the agreement; copies of two notification forms in which Sarah acknowledged that Wiley had not named her as a beneficiary of the survivor benefits available under his retirement plan; a copy of Wiley’s last will and testament in which he omitted Sarah as a beneficiary because, he indicated, of the postnuptial agreement; an affidavit from Jim Wilson, Jr,, the attorney who had drafted Wiley’s last will and testament; and a copy of the August 27, 2003, warranty deed by which Wiley had conveyed Sarah and Wiley’s marital home to his nephews, Albert Foster, Jr., and Jacques Marsh. The estate indicated that it was also submitting to the circuit court a copy of a “Response to Notice of Eviction Action,” but no such document was included in the record on appeal.[1]
Sarah opposed the estate’s summary-judgment motion. In her brief filed in opposition to that motion, she denied any recollection of signing the postnuptial agreement and she challenged the validity of the attorney’s notarization of the post-nuptial agreement because he had failed to maintain a notary register of his official acts, as required by Ala.Code 1975, § 36-20-7. She also argued that, if her signature was deemed valid on the postnuptial agreement, then the postnuptial agreement was not fair, just, and equitable from her point of view; Sarah asserted that the consideration recited in the postnuptial agreement was insufficient to support that agreement. Further, Sarah denied having had full knowledge of Wiley’s estate or knowledge of the estate’s full value, and she denied receiving independent legal advice at the time the alleged postnuptial agreement had been signed. In support of her opposition, Sarah submitted as an exhibit the transcript of the March 31, 2008, trial held before the circuit court. The estate raised no objection to the admissibility of that exhibit.[2]
On June 23, 2009, after hearing arguments on the motion, the circuit court entered a summary judgment in favor of the estate.[3] Sarah timely appealed to the Ala *925 bama Supreme Court, challenging whether the estate had met its burden of proof; the appeal was transferred to this court, pursuant to Ala.Code 1975, § 12-2-7(6).

Factual and Evidentiary Background

The evidence before the circuit court established the following. Sarah holds a master’s degree and is retired from the Alabama Department of Education. At the time of the March 2008 trial, she was receiving retirement benefits and Social Security benefits and she was participating in the Deferred Retirement Option Plan for state employees.
Sarah and Wiley married on July 31, 1984, and Sarah gave birth to their child shortly thereafter. At the time of the marriage, Sarah owned real property located at 914 Hill Street and Wiley owned real property located at 2300 Chappell Drive. The property owned by Sarah was located virtually next door to the property owned by Wiley.
The postnuptial agreement at issue in this case was purportedly executed on April 13, 1985. That agreement provided, in pertinent part:
“2. Husband and wife desire to define their respective rights in property acquired before and after, marriage.
“3. Husband and wife desire to define their marital property rights.
“4. Both husband and wife had in his or her own right certain real and personal property at the time of their marriage.
“5. Before their marriage to each other and in consideration thereof, husband and wife agreed verbally with each other that none of their respective property rights should in any way become affected or changed in any way by reason of their marriage.
“6. Both husband and wife consider themselves independent of the other from a financial perspective, and wish to protect the interest of their respective children born as a result of prior marriages with other persons.
“7. This instrument was entered into orally prior to the marriage of the parties, and is now reduced to writing in order to comply with the laws in such cases made and provided, and in order that there may be no misunderstanding of the terms and conditions of the contract property settlement. It was entered into by each party with full knowledge on the part of each of the extent and probable value of all the property, or estate, of the other, and of all the rights that, but for this agreement, would be conferred by law on each of them in the property, or estate, of the other, by virtue of the solemnization of the proposed marriage. It was and is the express desire of both of the parties that their respective rights in each other’s property, or estate, of whatsoever character it may be, real, personal, mixed, contingent, or otherwise, shall be determined and fixed by this agreement, as reduced to writing, expressing the oral contract and agreement prior to marriage as mentioned above, and not otherwise.
“For the reasons cited above, and in consideration of the mutual covenants contained herein, husband and wife agree one with the other as follows:
“Section One
“PROPERTY ACQUIRED BEFORE MARRIAGE
*926 “All property owned by either husband or wife prior to marriage, specifically including those items listed in Exhibit A attached hereto, shall remain the separate property of the party to whom the property belonged before marriage.
“SECTION TWO
“AFTER-ACQUIRED PROPERTY
“All property acquired after the marriage of the parties shall be the separate property of the party acquiring the property, with all rights, title, and interest exclusively in that party.
“SECTION THREE
“RELEASE OF MARITAL RIGHTS
“Each party shall have no rights or interest in separate property of the other, and each waives and releases all marital property rights in the other’s estate that he or she might otherwise have or obtain, and on the death of husband or wife, the decedent’s property shall pass by will or intestate succession to decedent’s heirs as if the marriage between husband and wife had never occurred.
“Each of the parties has made a full disclosure to the other party of all property owned or otherwise held by each respective party, as is shown in exhibit A attached hereto.
“The parties acknowledge that they, and each of them, have been represented by counsel of their choice in preparation of this agreement, that their rights in the property described in this agreement have been fully explained to them, that the legal effect of this agreement has been fully explained to them, and that they understand the terms, provisions, and legal effect of this agreement.”
Exhibit A was attached to the postnuptial agreement and provided:
“1. The following property is owned by husband alone:
“A. Real property located at 2300 Chappell Drive, Montgomery, Alabama.
“B. Real Property located at 2713 Dorothy Street, Montgomery, Alabama.
“C. All retirement benefits and disability benefits.
“D. Household goods, appliances and personal effects.
“2. The following property is owned by the wife alone:
“A. Real property located at 914' Hill Street, Montgomery, Alabama.
“B. Household goods, appliances and personal effects.”
Wayne Sabel, the attorney who notarized the postnuptial agreement, testified that he did not specifically recall the execution of the postnuptial agreement or the parties to that transaction. Sabel did testify that he would not have notarized any agreement, including the postnuptial agreement, unless the parties to that agreement had executed it in his presence. He also testified that he would not have allowed a party to sign a postnuptial agreement if he or she had had any questions about it or had expressed concerns or seemed uncomfortable with it. Sabel identified a letter dated April 15, 1985, addressed to Wiley and Sarah at 2300 Chappell Drive, as having been written on his letterhead and bearing his signature. In that letter, Sabel had stated: “Enclosed you will find the original agreement executed in my office on April 13,1985.”
On September 15, 1985, and again on September 23, 1985, Sarah executed forms acknowledging that Wiley had not designated her as a beneficiary under his retirement plan. Sabel had witnessed one of those acknowledgments. Sarah did not dispute the validity of her signature on those acknowledgment forms.
*927 Wiley executed his last will and testament on February 12, 2003. Included in that will was a clause indicating that “[m]y wife ... is not included as a beneficiary of this will as authorized by a written agreement between myself and my said wife dated April 13, 1985. It is my intent that my said wife take nothing under my will and that she not share in my estate.”
Wiley conveyed the Chappell Drive property to his nephews on August 27, 2003. Sarah did not join in the deed conveying that property to Wiley’s nephews. Wiley died on May 15, 2006. The nephews apparently began eviction proceedings against Sarah shortly thereafter.
At the March 2008 trial, Sarah testified that she did not recall signing a postnup-tial agreement. She denied that she had gone to attorney Sabel’s office to review or to execute such an agreement. She claimed that she had learned of the existence of that postnuptial agreement after Wiley’s death, when someone put a copy of it in her mailbox. Sarah, however, acknowledged that, in an earlier pleading filed in response to the nephews’ eviction notice, she had admitted signing the post-nuptial agreement. Sarah also admitted knowing that Wiley’s nephews had been involved in or responsible for the payment of the homeowners’ insurance on the Chappell Drive property even before Wiley’s death.

Standard of Review

“ ‘ “We review the trial court’s grant or denial of a summary judgment motion de novo.” Smith v. State Farm Mut. Auto. Ins. Co., 952 So.2d 342, 346 (Ala.2006) (citing Bookman v. WCH, L.L.C., 943 So.2d 789 (Ala.2006)). A summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. If the movant meets this initial burden, the burden then shifts to the nonmovant to present “substantial evidence” of a genuine issue of material fact. Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala.1999). Substantial evidence is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see also § 12-21-12(d), Ala.Code 1975. In determining whether a genuine issue of material fact exists, this Court views the evidence in the light most favorable to the nonmov-ant and resolves all reasonable doubts in favor of the nonmovant. Jones v. BP Oil Co., 632 So.2d 435, 436 (Ala.1993).’ ”
Harris v. Health Care Auth. of Huntsville, 6 So.3d 468, 472 (Ala.2008) (quoting McCutchen Co. v. Media Gen., Inc., 988 So.2d 998, 1001 (Ala.2008)).

Analysis

“[Ajntenuptial agreements are valid in Alabama. However, courts scrutinize such agreements to determine whether they are just and reasonable.” Barnhill v. Barnhill, 386 So.2d 749, 751 (Ala.Civ.App.1980) (citation omitted). Prenuptial and postnuptial agreements are scrutinized by the same standards. Tibbs v. Anderson, 580 So.2d 1337, 1339 (Ala.1991). In Barn-hill, supra, this court required the party seeking to enforce an antenuptial agreement — in that case, a husband seeking to enforce a prenuptial agreement — to show that the entire transaction was fair, just, and equitable from the wife’s point of view or that the agreement had been freely and voluntarily entered into by the wife, with competent independent advice and with full knowledge of her interest in the estate and its approximate value. Id. at 751. “Meeting the requirements of either of the *928 above tests is sufficient to give effect to an antenuptial agreement.” Id.
On appeal, Sarah asserts that the estate failed to meet either of those tests. As a result, she asserts, the deed from Wiley conveying the marital residence to the nephews was invalid.
Although not identified as a separate issue in her brief, Sarah appears to challenge the validity of her signature on the postnuptial agreement. We address that claim first. In her opposition to the summary-judgment motion, Sarah denied any recollection of having signed the post-nuptial agreement. Sarah also argues that the attorney who witnessed the execution of the postnuptial agreement failed to maintain a “fair register” of his official acts, as required by Ala.Code 975, § 36-20-7. That Code section provides that “[e]ach notary public must keep a fair register of all his official acts and give a certified copy therefrom, when required, on payment of his legal fees.”
In the transcript of the March 31, 2008, trial, however, Sarah acknowledged that, in a pleading filed in response to the nephews’ attempts to evict her, she had admitted signing the postnuptial agreement.[4] Even construing that testimony in favor of Sarah, the nonmovant, the circuit court had before it undisputed evidence indicating that Sarah’s signature on the postnup-tial agreement was valid.
Sarah next argues on appeal that, in the postnuptial agreement, Wiley failed to provide her with adequate consideration to support the agreement. In support of this argument, she relies on Ala. Code 1975, § 3(M-1, to argue that a husband has no claim and acquires no interest in any property owned by his wife before the marriage or acquired by the wife during the marriage. Section 30-4-1 provides that “[a]ll property of the wife, held by her previous to the marriage or to which she may become entitled after the marriage in any manner, is the separate property of the wife and is not subject to the liabilities of the husband.” Under her interpretation of the law, Sarah claims that Wiley had no right to any property she owned at the time they married or at the time the post-nuptial agreement was executed and, thus, that Wiley gave up nothing of value in the postnuptial agreement. Sarah cites no cases in support of her interpretation of § 3CM-1, and, as discussed below, we reject it.
This court routinely affirms equitable divisions of marital property in which assets either owned by the wife before the marriage or acquired by the wife during the marriage have been used for the benefit of the marriage. See, e.g., Ala.Code 1975, § 30-2-51 (discussing, among other things, property divisions). See also Nichols v. Nichols, 824 So.2d 797 (Ala.Civ.App.2001) (although marital property generally includes property purchased or otherwise accumulated by the parties during the marriage, it may also include the property acquired before the marriage or received by gift or inheritance during the marriage when it is used, or income from it is used, regularly for the common benefit of the parties during the marriage); and Ex *929 parte Yost, 775 So.2d 794 (Ala.2000) (money inherited from mother of divorcing wife constituted marital property subject to division, where the wife combined inherited money with other funds in account held jointly by husband and wife).
At the March 2008 trial, Sarah testified that she and Wiley had used her previously owned real property as rental property and that they had used the rental income to pay their household expenses. Thus, but for the existence of the postnuptial agreement, Wiley arguably would have obtained rights to Sarah’s previously owned real property.
The court in Barnhill also recognized that marriage, under appropriate circumstances, may be sufficient consideration for an antenuptial agreement. 386 So.2d at 751. “This is particularly true when other factors are present such as the husband’s relinquishment of any rights that he might have in the wife’s estate.” Id. See also Mayer v. Mayer, 628 So.2d 744 (Ala.Civ.App.1993) (discussing enforceability of antenuptial agreements); and Mixon v. Mixon, 550 So.2d 999, 1000 (Ala.Civ.App.1989) (accord).
In this case, Sarah and Wiley executed the postnuptial agreement eight and one-half months after they married. Thus, the delay between the marriage and the execution of the postnuptial agreement in this case falls between the delay discussed in Tibbs v. Anderson, 580 So.2d at 1338 (wife signed postnuptial agreement two hours after marriage ceremony; marriage found to be consideration for that agreement), and the delay in Mayer v. Mayer, 628 So.2d 744 (Ala.Civ.App.1993) (parties executed postnuptial agreement after 12 years of marriage; marriage found not to be consideration for that agreement). In the postnuptial agreement, Wiley and Sarah acknowledged that they had contemplated such an agreement before their marriage. We conclude that the marriage between Wiley and Sarah was not so far removed from the date of the execution of the post-nuptial agreement as to prevent the marriage from serving as partial consideration for the postnuptial agreement. See Barnhill, 386 So.2d at 751.
As discussed above, Wiley and Sarah also relinquished any claim they might have had to the other’s separately owned property. Relinquishment to each other’s estate also served as adequate consideration for the agreement. Id. For these reasons, Sarah’s argument that the post-nuptial agreement failed for lack of consideration is without merit.
As for the evidence necessary to establish that the postnuptial agreement was enforceable, we find substantial evidence in the record to support the trial court’s judgment under the second test of Barn-hill, supra. As stated above, Sarah admitted that she executed the agreement. In that agreement, Sarah and Wiley acknowledged
“that they, and each of them, have been represented by counsel of their choice in preparation of this agreement, that their rights in the property described in this agreement have been fully explained to them, that the legal effect of this agreement has been fully explained to them, and that they understand the terms, provisions, and legal effect of this agreement.”
Further, at the March 2008 trial, Sarah testified that she would not have signed such an agreement without seeking independent legal advice. Sarah admitted signing the agreement. Thus, Sarah’s own testimony offers some support for the inference that she sought and obtained legal advice before executing the postnuptial agreement.
*930 Even if Sarah did not obtain legal advice before signing the postnuptial agreement, that is, in our opinion, of no consequence here. See Brown v. Brown, 26 So.3d 1210, 1214 (Ala.Civ.App.2007), aff'd, 26 So.3d 1222 (Ala.2009) (citing Strait v. Strait, 686 So.2d 1230, 1234 (Ala.Civ.App.1996)) (wife was not entitled to relief from antenuptial agreement simply because she claimed she failed to consult with her lawyer). Sarah does not allege that fraud or duress was involved in the execution of the agreement or that she was in any way prevented from seeking legal counsel. Thus, if she did not consult with a lawyer, that was of her own choosing. Additionally, Sarah was highly educated and, as such, cannot be relieved of her legal contracts on the basis of failing to protect her own interests. Alabama law provides that
“ ‘in the absence of fraud or misrepresentation, a party is bound by the terms of a contract, even if he fails to read it. The law is equally clear that ordinarily when a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract and will be bound thereby.’ ”
Brown, 26 So.3d at 1214 (quoting Power Equip. Co. v. First Alabama Bank, 585 So.2d 1291, 1296 (Ala.1991)). Sarah cannot seek to avoid the legal effect of her own contractual agreement by claiming that she failed to seek legal advice when she represented in the agreement that she had done so.
We also find substantial evidence to establish that Sarah had knowledge of Wiley’s estate and the approximate value of that estate. Sarah has not alleged that Wiley failed to disclose any other substantial assets to her, and the only property at issue in this case was the real property located at 2300 Chappell Drive. That property was expressly disclosed to Sarah in the postnuptial agreement. Further, Sarah acknowledged in the agreement that full disclosure of the Wiley’s estate had been made to her and that she was aware of the approximate value of that estate. Therefore, she is bound by the representations contained in that agreement. See Brown, supra. Moreover, this court has required only that the party against whom the agreement is being enforced have a general knowledge, not a full knowledge, of the other’s estate. Id. at 1213 (citing Barnhill, 386 So.2d at 752). The record indicates that Sarah had a general knowledge of Wiley’s estate.
For the above-stated reasons, we conclude that the record contains evidence sufficient to establish the enforceability of the postnuptial agreement under the second test stated in Barnhill, supra. The evidence before the circuit court was sufficient to establish that Sarah freely and voluntarily entered into the agreement, that she was provided an opportunity to obtain competent legal advice, and that she had knowledge of her interest in Wiley’s estate and knowledge of the approximate value of Wiley’s estate. We further conclude that Sarah did not present substantial evidence creating any genuine issue of material fact regarding the enforceability of the postnuptial agreement.
Sarah next argues that Wiley’s 2003 deed conveying the marital residence on Chappell Drive to the nephews was invalid because the postnuptial agreement was invalid. We have already concluded that the postnuptial agreement was valid and enforceable, thus, we summarily reject that argument.
In support of her argument, however, Sarah relies on Goodwin v. Goodwin, 592 So.2d 212 (Ala.1991). Although in the circuit court and on appeal Sarah argued only *931 that the conveyance was invalid because the postnuptial agreement was invalid — an argument we have already rejected and an argument not at issue in Goodwin, supra — our supreme court in Goodwin granted the widow in that case the relief she sought on appeal. Therefore, we address Goodwin out of an abundance of caution.
In Goodivin, the husband and the wife executed a prenuptial agreement; in that agreement, the wife was granted a life estate in any home the husband owned in which she and the husband lived at the time of the husband’s death. Id. at 213. In that agreement, the wife also specifically waived certain rights granted to her pursuant to Ala.Code 1975, § 43-8-72, which the parties referred to as “spousal rights.” Id. Before his death, the husband conveyed the marital home to his sons from a previous marriage; the wife did not join in that conveyance. Upon the husband’s death, the wife filed an action to set aside that conveyance. Id. The trial court entered a summary judgment in favor of the sons, concluding that the wife had waived her rights via the prenuptial agreement. Id. The wife appealed, and our supreme court reversed. Id. at 215.
The supreme court in Goodwin stated:
“It is clear from the wording of Paragraph 2 of the antenuptial agreement that it was the intention of these parties when they signed this antenuptial agreement that [the wife] have a life estate in the homestead property. It is equally clear that it was not the intention of the parties in signing this antenuptial agreement that [the wife] would waive her right under § 6-10-3 to dissent from a conveyance of the homestead.
“The trial court reasoned that because one does not obtain a spouse’s right to dissent from a conveyance of the homestead until one becomes a spouse, [the wife] meant to waive her right to consent to the conveyance of the homestead by signing the antenuptial agreement. We can not agree that this is what the two intended. Why would [the wife] waive, in paragraph 4, the right to continue to live in the homestead specifically set aside to her in paragraph 2?
“Furthermore, the waiver of spousal rights under paragraph 4 specifically refers to the waiver of spousal rights as being given ‘[p]ursuant to the authority of Section 43-8-72 of the Code of Alabama 1975, as amended....’”
592 So.2d at 214. The supreme court identified the spousal rights at issue in § 43-8-72 as the wife’s right to an elective share, the right to seek a homestead allowance, and the right to claim exempt property and a family allowance — rights that would arise and attach to the wife only upon the death of the husband. Id. at 215. The court recognized, however, that, by executing the prenuptial agreement, the wife had not waived her rights as a wife during the lifetime of the husband. Id. The court further noted that, although the prenuptial agreement at issue specifically referenced the wife’s rights pursuant to § 43-8-72, that agreement did not mention Ala.Code 1975, § 6-10-3. Id. For those reasons, the supreme court concluded that the wife was entitled to challenge the husband’s conveyance of the marital home made without her consent; the court reversed the summary judgment entered in favor of the husband’s sons.
We find Goodwin, supra, distinguishable from the instant case. First, in the premarital agreement in Goodwin, the wife was granted a life estate in the marital home while, in this ease, Sarah was not. Thus, the wife in Goodwin had spousal rights to the marital home that survived the prenuptial agreement and survived the husband’s death; in this case, Sarah had *932 no rights to the marital residence that survived beyond the execution of the post-nuptial agreement. Further, the language of the postnuptial agreement at issue in this case was broader than the language of the agreement at issue in Goodwin, supra. The wife in Goodwin waived only those rights that accrued to her at her husband’s death pursuant to § 43-8-72. In this case, Sarah and Wiley agreed that their separate property would pass “as if the marriage between [Wiley and Sarah] had never occurred.” By virtue of the binding postnuptial agreement, Sarah agreed that she would acquire no claim or rights as a spouse in Wiley’s property. Thus, Sarah waived her right to dissent, under Ala. Code 1975, § 6-10-3, from the conveyance of the marital residence without her signature.
For the foregoing reasons, the circuit court’s judgment is due to be affirmed.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ, concur.

. The clerk’s record is numbered sequentially and no pages appear to be missing.

. See 32A CJ.S. Evidence § 863 (2007) (recognizing that when proceedings are void, the record of such proceedings is inadmissible). Because no objection to the exhibit was raised, however, the circuit court was free to consider the transcript submitted by Sarah.

. The circuit court erroneously dated that judgment July 9, 2009, and the circuit court purported to enter a corrective final judgment on June 24, 2009. Rule 58, Ala. R. Civ. P., however, governs the date of entry of the *925 circuit court’s judgment. Because the circuit court’s initial summary judgment was entered into the State Judicial Information System on June 23, 2009, that judgment is the final judgment in this case.

. The estate submitted a copy of that pleading as an exhibit at the March 31, 2008, trial and those documents were before this court in the earlier appeal. The exhibits filed in that earlier appeal were destroyed after an appropriate amount of time. The estate also indicated that a copy of this pleading had been submitted to the circuit court in support of its summary-judgment motion; however, that document is not found in the record. We have no indication whether it was, in fact, before the circuit court. Sarah's testimony regarding that document and her admission that, in it, she had acknowledged her signature on the postnuptial agreement, however, were before the circuit court.