BRYAN, Judge.
 

 Kristi L. Hood (“the wife”) appeals from a judgment entered by the Etowah Circuit Court (“the trial court”) that divorced her from Frank L. Hood (“the husband”).
 

 On July 17, 2007, the husband filed a complaint for a divorce from the wife. In his complaint, he alleged that the parties had married on December 28, 1998, that they had separated in April 2007, that one child had been born of the marriage in April 2000, and that the trial court should grant him a divorce from the wife on the grounds of incompatibility of temperament, mental abuse, and physical abuse. The husband sought, among other things: (1) primary physical custody of the parties’ child; (2) an award of the parties’ residence on Hood Drive (“the marital residence”), with an obligation to pay the mortgage on it; (3) an award of the “river lot,” with an obligation to pay the mortgage on it; (4) a division of the parties’ personal property in accordance with an antenuptial agreement that the parties had signed on December 28, 1998; (5) an equitable division of the parties’ debts; (6) an award of all of his bank accounts and his individual retirement account (“IRA”); and (7) an order finding that the issue of alimony is “moot and forever waived.”
 

 The wife subsequently filed an answer to the husband’s complaint and a counterclaim for a divorce, asserting adultery and
 
 *669
 
 incompatibility of temperament as grounds for the divorce. The wife requested (1) temporary and permanent custody of the parties’ child; (2) temporary and permanent child support; (3) temporary and permanent alimony; (4) temporary and permanent exclusive possession of the marital residence; (5) an order requiring the husband to pay all the parties’ marital debts; (6) an award of her attorney’s fees; (7) and any other relief to which she may be entitled. The husband answered the wife’s counterclaim for a divorce and asserted, among other things, that, pursuant to the parties’ antenuptial agreement, the wife had no claim to alimony or the marital residence.
 

 On October 10, 2007, the husband filed a motion for a partial summary judgment, alleging that the parties had entered into an antenuptial agreement, that the wife had waived all claims to the marital residence and to alimony or support in the event the parties divorced, and that he was entitled to a judgment in his favor regarding the wife’s claims for alimony and an award of the marital residence. The wife filed a response to the husband’s partial-summary-judgment motion and an affidavit in support of her response, in which she alleged that she had signed the antenuptial agreement under duress and that the husband had not made a full disclosure of his assets. On January 3, 2008, the trial court denied the husband’s motion for a partial summary judgment.
 

 After several continuances, the trial court, on March 13, 2009, conducted a hearing on the enforceability of the ante-nuptial agreement. The only testimony presented at this hearing was from the wife on the issue whether she signed the antenuptial agreement while under duress. The wife testified that .she had met the husband in Natchez, Mississippi, when she was working as a registered nurse. There is an indication in the record that the husband is a doctor. At that time, the wife had custody of two children from a previous marriage, and the parties began living together in the wife’s home in Natchez with her two children. The husband paid the mortgage on that residence while they lived together. After the parties became engaged, the husband moved to Gadsden, and, approximately one month before the wife and her children moved to Gadsden in the summer of 1998, the husband purchased the home on Hood Drive, i.e., the marital residence. After the wife moved with her children to live with the husband in the marital residence, she decided to make her home in Natchez available to rent.
 

 The wife stated that the parties had never set a wedding date, but, she stated, at midnight on December 28, 1998, the husband asked her if she wanted to get married at the courthouse that day, and she agreed. The wife stated that she did not learn that the husband expected her to sign an antenuptial agreement until they were on the way to the courthouse to be married. According to the wife, the husband told her that they had to stop at his attorney’s office to sign “the marriage papers” and it was not until she was at the husband’s attorney’s office that she realized that the husband wanted her to sign an antenuptial agreement. Apparently, the wife was shocked at the request and began crying.
 

 The wife stated that the husband’s attorney had discussed the antenuptial agreement with her, and she admitted that she had understood that in the event the parties divorced the husband “would reserve control over certain things that he had,” including the marital residence. The wife also testified that she had understood that she would not have a claim to the husband’s IRA, pension plans, and stocks that
 
 *670
 
 he owned before the marriage, but she also stated that she did not know what pension plans the husband owned. The wife admitted that while she was at the husband’s attorney’s office she understood that she would not have a claim to the property listed in the agreement if the parties divorced.
 

 The wife further testified that the husband’s attorney had sent the wife and the husband to another attorney, “his good friend,” so the wife could review the agreement with a separate attorney. According to the wife, the husband was approximately 10 feet away outside an open door when she was discussing the agreement with her “independent” counsel. The wife stated that the attorney that she met with only browsed through the agreement because the parties were trying to make it to the courthouse before it closed. The wife stated that she was crying and was trying to whisper to the attorney because the husband looked mad and that she did not understand what the attorney told her. The wife testified that, initially, she refused to sign the agreement, so she and the husband left the attorney’s office and returned to their home. According to the wife, the husband told her that he would not have the nerve to get married if she did not sign the antenuptial agreement. The parties subsequently returned to the second attorney’s office, and she signed the antenuptial agreement.
 

 The wife claimed that she did not know that the second attorney was supposed to be her attorney, and she stated that she did not understand that she had waived a right to alimony in the event the parties divorced. The wife stated that she was never able to read through the entire agreement, but she agreed that she knew that she was giving up rights by signing the agreement that she otherwise would have had if she had not signed the agreement.
 

 According to the wife, her former husband had been threatening to take custody of their children because she was living with the husband in violation of their divorce judgment. The wife stated that the husband was aware of that fact, and the wife thought that, if she did not sign the agreement, she and the husband would not get married and there was a possibility that she would loose custody of her children. She stated that her children were ages one and three years old at the time she signed the antenuptial agreement and that she had no money and no place to live because her home in Natchez was occupied by renters.
 

 The husband’s attorney offered the parties’ antenuptial agreement into evidence, but no other exhibits were offered or admitted during that hearing. That agreement states, in pertinent part:
 

 “WHEREAS, the parties to this agreement contemplate entering into the marriage relation with each other, and;
 

 “WHEREAS, [the husband], individually owns certain tangible and intangible property, a list of which is set out hereinafter in Exhibit ‘A’, the nature and extent of which has been disclosed to the [wife], and
 
 he desires that all property now owned or hereafter acquired
 
 by either [sic] shall be free, for purposes of testamentary disposition, divorce or otherwise, from any claim of the [wife], that may arise by reason of their contemplated marriage,
 
 other than as set out herein:
 

 “NOW THEREFORE, in consideration of the premises and the mutual covenants herein contained, it is agreed as follows:
 

 “1. Both before and after the solemnization of the marriage between the parties, [the husband] shall separately
 
 *671
 
 retain all rights in his own property, including all interest, rents and profits which may accrue or result in any manner from increases in value, and he shall have the absolute and unrestricted right to dispose of his property, free from any claim that may be made by the [wife] by reason of their marriage, and with the same effect as if no marriage had been consummated between them, whether such disposition be made by gift, conveyance, sale, lease; by will or codicil or other testamentary means; by laws of intestacy; or otherwise.
 
 Any property, real, personal or mixed, acquired after the date of said marriage shall be considered joint property unless agreed to in writing, signed by both parties.
 

 [[Image here]]
 

 “8.
 
 [The wife] has examined the financial statements attached hereto and made a part hereof as Exhibit ‘A’ and has had the opportunity to question and examine all items therein, and acknowledges that fair disclosure has been made by [the husband], as contemplated under the provisions of Section 43-8-72, Code of Alabama (1975), as amended. Each certifies that he or she has had an independent and separate counsel and has been independently advised and has been given, without limitation, all information requested. Each further certifies that counsel has advised and informed him or her of the legal effects of this document.
 

 “9.
 
 In the event of the death of [the husband] or the granting of a final divorce decree, [the wife] shall have no right to any claim against the estate of [the husband] based on spousal or marital rights including, but not limited to maintenance, support, or property settlements, by reason of or on account of dissolution of the marriage, or by reason of death.”
 

 (Emphasis added.)
 

 Exhibit A, which was a document attached to the antenuptial agreement, was labeled “Property to be Retained by [the husband], Individually, Without Any Claims by [the wife],” and it included six paragraphs identifying real and personal property, as follows:
 

 “1. Any pension plan, including all stocks owned prior to marriage of parties, and including any IRA accounts, SEP IRA accounts or 401k accounts.
 

 “2. A1 checking and/or savings accounts, including money market accounts individually owned by [the husband], prior to marriage of the parties.
 

 “3. A1 jewelry owned by [the husband], including jewelry passed down to said [husband] by his parents, and/or grandparents, including his mother’s engagement ring, grandmother’s engagement ring, mother’s diamond/ruby ring, mother’s emerald ring, and father’s diamond cluster ring.
 

 “4. Automobiles owned prior to marriage, including BMW automobile [and] Ford Explorer.
 

 “5. Home, real estate, and furnishings located therein, located at [the marital residence].
 

 “6. A1 personal property and belongings owned by [the husband] prior to the marriage of the parties.”
 

 On May 5, 2009, the trial court entered an order finding that the antenuptial agreement was “voluntarily entered into by the husband and the wife for good and valuable consideration and that the agreement was fair, just and reasonable from the [wife]’s point of view so as to be valid under general principles governing ante-nuptial agreements.” The trial court further held
 

 
 *672
 
 “that the antenuptial agreement provides in relevant part that in the event of ‘the granting of a final divorce decree, [the wife] shall have no right to any claim against the estate of [the husband] based on spousal or marital rights including, but not limited to, maintenance, support or property settlements, by reason of or on account of dissolution of the marriage....
 

 “The antenuptial agreement further provides, in Exhibit A, certain specific property to be ‘retained’ by [the husband], individually, without any claims by [the wife].
 

 “The antenuptial agreement provides that the property retained by the [husband] without any claims by the [wife] is as follows:
 

 “[List of property identified in Exhibit A of the antenuptial agreement, set forth above.]
 

 “It is, therefore, considered ORDERED, ADJUDGED and DECREED that the antenuptial agreement dated December 28, 1998, is valid and enforceable and the [wife] has no claim for alimony or against those items identified in Exhibit A of the antenuptial agreement as set out above.”
 

 The wife filed a motion to alter, amend, or vacate the order finding the antenuptial agreement valid and enforceable, and, after conducting a hearing, the trial court denied that motion. A transcript of that hearing in the record indicates that the wife argued only that the antenuptial agreement was invalid because she had signed it under duress. On August 25, 2009, the trial court entered an order that stated: “The judgment dated the 5th of May, 2009, is hereby deemed to be a [flinal [o]rder from which an appeal can be taken.”
 
 [1]
 
 The wife subsequently filed a notice of appeal, but there is no indication in the record that the wife’s appeal from the May 2009 judgment was ever before this court.
 
 [2]
 

 According to the case-action summary, the case was set for a final hearing on January 5, 2010; however, there is no indication in the record that a trial or a hearing was conducted on that date. On February 16, 2010, the trial court entered an order that stated:
 

 “The court was under the impression that the parties were going to bring an order for the court’s review and consideration shortly after the January 5, 2010, hearing and the court has not been presented with same. The court respectfully requests that it be provided with same within 7 days to avoid having to set this matter for hearing again.”
 

 The wife’s attorney, on February 25, 2010, filed a motion for leave to withdraw, allegedly at the request of the wife. After the motion to withdraw was granted, a different attorney filed a notice of appearance on behalf of the wife on March 12, 2010. The same day, the wife filed a
 
 *673
 
 motion for temporary custody and for a pendente lite hearing, alleging that the trial court had not entered a temporary award of custody or child support, despite the fact that the matter had been pending since July 2007. On the same day, the wife filed a motion for an order voiding the antenuptial agreement, alleging that she had been under duress when she signed the agreement, that she had not been adequately advised of the husband’s assets when she signed the agreement, that she did not have independent knowledge of the husband’s assets when she signed the agreement, and that the provisions of the agreement were conflicting and ambiguous. The trial court, on the same day, entered an order stating that the wife’s motion to void the antenuptial agreement was moot and that the
 

 “court has already heard the facts of this case and has directed the attorney for the [husband] to draft an order. It is the understanding of the court that the decree was prepared by [the husband’s attorney] and submitted to [the wife’s former attorney] for his review and that [the wife’s former attorney] failed to follow through with same. The court awaits the final decree for the court’s consideration and review and if not received by the court within 7 days this case will be dismissed.”
 

 On March 31, 2010, the trial court entered a judgment divorcing the parties on the grounds of incompatibility of temperament and an irretrievable breakdown of the marriage. The parties were awarded joint legal custody of their child, and the wife was awarded primary physical custody of the child, subject to the husband’s visitation rights as specifically set forth in the judgment. The husband was ordered to pay the wife child support in the amount of $250.56 a month, and the wife was required to maintain health-insurance coverage for the child. The trial court specifically incorporated the May 2009 order into the March 2010 judgment.
 

 On April 19, 2010, the wife filed a post-judgment motion pursuant to Rule 59, Ala. R. Civ. P. The wife alleged that no trial had taken place on January 5, 2010, that she had not entered into a settlement agreement with the husband, and that she had relevant evidence to present to the trial court related to determining the grounds for the divorce and related to issues of custody, visitation, child support, alimony, and property distribution. At the hearing on her postjudgment motion, the wife objected to the fact that the husband’s attorney had presented the trial court with a draft order when the trial court had not heard any evidence. Specifically, the wife argued that the husband had been awarded “very liberal” visitation with the child without any evidence related to the best interests of the child, and she disputed the amount of income attributed to the husband on the CS^2 Child-Support Guidelines form filed by the husband shortly before the divorce judgment was entered. The wife also argued that the antenuptial agreement was ambiguous, citing the language in the agreement that says that “[a]ny property, real, personal, or mixed acquired after the date of said marriage shall be considered joint property unless agreed to in writing....” The wife further alleged that there were property issues that had not been addressed in the judgment and that there was at least one piece of real property that was jointly owned by the parties.
 
 [3]
 
 The wife argued that, according to the antenuptial agree-
 
 *674
 
 merit, the trial court would be required to consider the property the parties had acquired after their marriage for equitable distribution.
 

 At the hearing on her postjudgment motion, the wife testified that on the date set for trial, i.e., January 5, 2010, she came to the courthouse for trial and her attorney and the husband’s attorney attempted to settle the case. She stated that the parties did not reach an agreement, that she never went inside the courtroom, that she never spoke to the trial-court judge, that she never presented any testimony, and that she did not offer any evidence. She testified that she had accumulated evidence related to her case, that she wanted the trial-court judge to hear it, and that her former attorney had told her that she was going to have to come back for another hearing to finalize the divorce.
 

 The husband did not present any testimony, but his attorney argued that, after the trial court ruled on the validity of the antenuptial agreement, the only remaining issues were custody, visitation, and child support. He argued that custody and visitation issues were resolved on January 5, 2010, and that the parties only needed to submit income affidavits. The record reflects that the husband submitted a CS-42 Child-Support Guidelines form on March 29, 2010.
 

 The trial court subsequently entered an order denying the wife’s postjudgment motion, and the wife timely appealed.
 

 On appeal, the wife contends (1) that the trial court erred as a matter of law when it determined that the antenuptial agreement is valid and enforceable; (2) that, even if the antenuptial agreement is valid and enforceable, the trial court erred by denying her postjudgment motion because the trial court failed to conduct a trial on issues remaining after determining the validity of the antenuptial agreement; and (3) that the trial court’s errors in this case have rendered the March 2010 judgment nonfi-nal.
 

 The wife argues that the trial court’s failure to divide the parties’ jointly held property, its failure to divide the parties’ marital debts, and its failure to rule on her request for an attorney’s fee renders the judgment nonfinal. We disagree. This court has held that a trial court’s failure to adjudicate a claim for attorney’s fees does not render a judgment nonfinal,
 
 see Morrison v. Morrison,
 
 1 So.3d 1052, 1053 (Ala.Civ.App.2008), and we have also held that a trial court’s failure to specifically address marital debts or jointly owned property in a divorce judgment does not render the judgment nonfinal,
 
 see Clements v. Clements,
 
 990 So.2d 383, 395 (Ala.Civ.App.2007).
 

 The husband contends that the March 2010 judgment is due to be affirmed because, he says, (1) the wife failed to take any action in her appeal of the May 2009 order finding the antenuptial agreement valid and enforceable, (2) the trial court correctly concluded that the antenuptial agreement was valid and enforceable, and (3) the March 2010 judgment enforces an agreement entered into by the parties on January 5, 2010.
 

 Initially, we note that, before the entry of the March 2010 final judgment, the wife was not bound, as the husband argues, by the trial court’s May 2009 determination that the antenuptial agreement is valid and enforceable because the May 2009 order was never properly certified by the trial court as a final, appealable judgment pursuant to Rule 54(b), Ala. R. Civ. P.
 
 See supra
 
 notes 1 and 2;
 
 see also Blythe v. Blythe,
 
 976 So.2d 1018, 1020 (Ala.Civ.App.2007) (discussing
 
 Schneider Nat’l Carriers, Inc. v. Tinney,
 
 776 So.2d 753, 754 (Ala.2000), and
 
 Hanner v. Metro
 
 
 *675
 

 Bank & Protective Life Ins. Co.,
 
 952 So.2d 1056, 1061 (Ala.2006), and the requirements pertaining to a trial court’s order purporting to certify a judgment as final pursuant to Rule 54(b)). The trial court’s May 2009 determination that the antenup-tial agreement is valid and enforceable did not become final until it was incorporated into the March 2010 final judgment. Because the wife raised issues concerning the validity and enforceability of the antenup-tial agreement in a postjudgment motion, we will consider those arguments on appeal.
 

 The wife argues that the trial court erred by concluding that the ante-nuptial agreement is valid and enforceable because, she says, (1) her testimony indicated that she was under duress when she signed the agreement, (2) she did not have the opportunity to obtain the advice of independent counsel, and (3) the husband failed to provide full disclosure of the existence and/or value of his assets. We note that the trial court’s determination that the antenuptial agreement is valid and enforceable, insofar as that determination was made after the presentation of ore tenus evidence, is presumed correct and will be reversed only if it is unsupported by the evidence and plainly and palpably wrong.
 
 Ex parte Brown,
 
 26 So.3d 1222, 1225 (Ala.2009) (quoting
 
 Clements,
 
 990 So.2d at 389). Moreover, “ ‘in the absence of specific findings of fact, an appellate court will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.’ ”
 
 Id.
 
 (quoting
 
 Clements,
 
 990 So.2d at 390).
 

 “Alabama law has long held that ante-nuptial agreements are generally enforceable in equity, but ‘[b]ecause of the confidential relationship of the two parties, such contracts are scrutinized by the courts to determine their justice and reasonableness.’
 
 Allison v. Stevens,
 
 269 Ala. 288, 291, 112 So.2d 451, 453 (1959).
 
 See also Ruzic v. Ruzic,
 
 549 So.2d 72 (Ala.1989); Ala.Code 1975, § 3(M-9 (‘The husband and wife may contract with each other, but all contracts into which they may enter are subject to the rules of law as to contracts by and between persons standing in confidential relations.’).
 

 “In
 
 Allison,
 
 th[e Alabama Supreme] Court stated that the proponent of an antenuptial agreement has
 

 “ ‘the burden of showing that the consideration was adequate and that the entire transaction was fair, just and equitable from the [other party’s] point of view
 
 or
 
 that the agreement was freely and voluntarily entered into by the [other party] with competent independent advice and full knowledge of [the other party’s] interest in the estate and its approximate value.’
 

 “269 Ala. at 291, 112 So.2d at 452 (emphasis added).”
 

 Id.
 
 at 1225-26.
 

 After a review of the evidence in the record and in light of our standard of review on appeal, we conclude that the trial court could have concluded that the wife voluntarily signed the antenuptial agreement. Although the wife presented evidence indicating that she believed that she would not have had a place to live with her children if she had not signed the agreement, there was no indication that the husband had told her that she and her children would be immediately required to vacate his home if she did not sign the agreement. Moreover, there was no indication that the wife’s former husband had filed an action to modify custody based on the wife’s living arrangement with the husband. In short, the wife did not present any evidence indicating that there was a
 
 *676
 
 need to sign the antenuptial agreement shortly after she became aware of the agreement in order to prevent losing custody of her children.
 

 We also conclude that the trial court could have determined that the wife had signed the agreement after receiving competent independent advice. In
 
 Ex parte Brown, supra,
 
 our supreme court affirmed a trial court’s determination that an ante-nuptial agreement was valid, despite the wife’s claim that she had not had the opportunity to meet with her attorney before she signed the agreement, because the agreement itself, which was signed by the wife, stated that the wife was acting voluntarily and under the advice of independent legal counsel.
 
 Id.
 
 at 1227. Likewise, in the present case, the wife signed the agreement that stated that she had been advised by independent counsel and that she had been informed of the legal effects of the agreement. Relying on that certification from the wife, the trial court could have concluded that the wife had received competent independent advice.
 

 Finally, the wife contends that the ante-nuptial agreement should be unenforceable because the agreement did not provide “full disclosure” of the husband’s assets. However, “this court has required only that the party against whom the agreement is being enforced have a
 
 general
 
 knowledge, not a full knowledge, of the other’s estate.”
 
 Lemaster v. Dutton,
 
 694 So.2d 1360, 1368 (Ala.Civ.App.1996) (citing
 
 Barnhill v. Barnhill,
 
 386 So.2d 749, 752 (Ala.Civ.App.1980), and
 
 Woolwine v. Woolwine,
 
 519 So.2d 1347, 1350 (Ala.Civ.App.1987)). The record indicates that the husband and the wife had dated for approximately one and a half years before they were married, and the wife does not contend that she did not have a general knowledge of the husband’s estate.
 

 The wife, other than citing a case setting forth the husband’s burden of proof as stated in
 
 Ex parte Brown, supra,
 
 has not cited any authority to support her argument that the antenuptial agreement should not be enforced because she signed the agreement under duress, because she did not have independent legal counsel, or because the husband failed to fully disclose his assets in the antenuptial agreement.
 
 See
 
 Rule 28(a)(10), Ala. R.App. P. (requiring an appellant to cite authority in support of his or her arguments made on appeal). Because we conclude that the trial court could have determined that the wife had voluntarily signed the agreement, with independent advice, and with a general knowledge of the husband’s estate, we affirm that part of the trial court’s judgment concluding that the antenuptial agreement is valid and enforceable.
 

 The wife also argues that the terms of the antenuptial agreement are ambiguous because, she says, provisions in the agreement are in direct conflict. Whether the parties’ antenuptial agreement is ambiguous is a question of law, which we review de novo.
 
 See Meyer v. Meyer,
 
 952 So.2d 384, 391 (Ala.Civ.App.2006).
 

 “To determine whether the antenup-tial agreement is ambiguous, the trial court was required to review the agreement to determine if ‘ “the intent of the parties c[ould] be fairly and reasonably gleaned from the four corners of the document.” ’
 
 Stacey v. Saunders,
 
 437 So.2d 1230, 1234 (Ala.1983)
 
 (quoting Schmidt v. Ladner Constr. Co.,
 
 370 So.2d 970, 972 (Ala.1979))....
 

 “The interpretation of a provision in an antenuptial agreement, like the interpretation of any provision in any contract, is a question of law for the trial court.
 
 Laney v. Laney,
 
 833 So.2d 644, 646 (Ala.Civ.App.2002).”
 

 
 *677
 

 Peden v. Peden,
 
 972 So.2d 106, 110 (Ala.Civ.App.2007).
 

 “An agreement that by its terms is plain and free from ambiguity must be enforced as written.
 
 Jones v. Jones, 722
 
 So.2d 768 (Ala.Civ.App.1998). An ambiguity exists if the agreement is susceptible to more than one meaning.
 
 Vainrib v. Downey,
 
 565 So.2d 647 (Ala.Civ.App.1990). However, if only one reasonable meaning clearly emerges, then the agreement is unambiguous.
 
 Id.
 
 Finally, if a provision of an agreement is certain and clear, it is the duty of the trial court to determine its meaning, and the court’s determination is afforded a heavy presumption of correctness and will not be disturbed unless it is clearly erroneous.
 
 Id.”
 

 R.G. v. G.G.,
 
 771 So.2d 490, 494 (Ala.Civ.App.2000).
 

 Furthermore, “Alabama appellate courts have stated that a court will not look beyond the four corners of a written instrument unless the instrument contains latent ambiguities.”
 
 Judge v. Judge,
 
 14 So.3d 162, 165 (Ala.Civ.App.2009).
 
 See also Meyer v. Meyer,
 
 952 So.2d at 391 (discussing the difference between latent and patent ambiguities).
 

 The wife argues only that the second paragraph of the antenuptial agreement, quoted above, is in direct conflict with the last sentence of the paragraph labeled “1.” in the antenuptial agreement. The second paragraph in the agreement states that the husband “desires that all property now owned or hereafter acquired by either [sic] shall be free, for purposes of ... divorce ..., from any claim of [the wife], that may arise by reason of their contemplated marriage, other than as set out herein.” The last sentence of paragraph “1.” states that “[a]ny property, real, personal, or mixed, acquired after the date of said marriage shall be considered joint property unless agreed to in writing, signed by both parties.” We note that the language, “other than as set out herein,” in the second paragraph of the agreement indicates that parts of the agreement following that paragraph may conflict with the husband’s desire to keep “all property now owned or hereafter acquired ... free from any claim of [the wife].” The paragraph labeled “1.” provides that the husband shall retain “all rights to his property,” which was identified in the agreement as the property set forth in Exhibit A, but also specifically states that any property acquired after the date the parties married
 
 shall
 
 be considered joint property. Therefore, because of the proviso in the second paragraph of the agreement, set forth above, we cannot conclude that the parts of the agreement cited by the wife make the agreement ambiguous.
 

 The wife does not argue that paragraph nine of the antenuptial agreement, which was cited by the trial court in the May 2009 order to support its conclusion that the wife did not have a right to alimony, is ambiguous. Because the wife has not argued that issue on appeal, it is waived.
 
 See Tucker v. Cullman-Jefferson Counties Gas Dist.,
 
 864 So.2d 317, 319 (Ala.2003) (quoting
 
 Asam v. Devereaux,
 
 686 So.2d 1222, 1224 (Ala.Civ.App.1996), citing in turn
 
 Boshell v. Keith,
 
 418 So.2d 89 (Ala.1982)) (“ ‘When an appellant fails to properly argue an issue, that issue is waived and will not be considered.’ ”). Accordingly, we affirm that part of the divorce judgment that determined that paragraph nine of the antenuptial agreement constituted a waiver of the wife’s right to alimony.
 

 The wife argues that the trial court’s determination that she had no claim to the property listed in Exhibit A of the antenuptial agreement did not adequately identify the property that she did
 
 *678
 
 not have a claim to because the trial court did not conduct a hearing to allow the parties to identify property that was acquired after the marriage. We agree. As discussed above, the agreement clearly provides that any property acquired after the date the parties married
 
 shall
 
 be considered joint property. Accordingly, the trial court should have conducted a hearing so that the parties could present evidence regarding what, if any, property had been acquired after the date the parties married, and the trial court should have, after considering the entirety of the ante-nuptial agreement, determined the proper disposition of the parties’ property. Because the trial court failed to do so, the divorce judgment, insofar as it was entered without full consideration of the evidence regarding the parties’ joint property, is due to be reversed and the cause remanded with instructions to the trial court to conduct further proceedings consistent with this opinion.
 

 We also agree with the wife that the trial court erred by failing to conduct a hearing to consider evidence related to all the remaining issues before the trial court, such as custody, -visitation, and child support. On appeal, the parties dispute the existence of an agreement that allegedly settled these issues. However, as the wife argues, there is no indication in the record that the parties entered into an agreement. We discussed similar circumstances in
 
 Willis v. Willis,
 
 45 So.3d 347 (Ala.Civ.App.2010). In that case, the divorce judgment incorporated a “partial” settlement agreement, but the partial agreement was not set forth in the record. We stated:
 

 “The record contains no written documentation of the parties’ partial settlement agreement, and an oral settlement agreement is valid and enforceable
 
 ‘only
 
 if it is made in open court or during a pretrial conference.’
 
 Contractor Success Group, Inc. v. Service Thrust Org., Inc.,
 
 681 So.2d 212, 215 (Ala.Civ.App.1996). This court has explained:
 

 “ ‘All settlement agreements entered into by attorneys and occurring at the trial-court level are governed by § 34-3-21, Ala.Code 1975.
 
 Ex parte Sims,
 
 627 So.2d 380, 382 (Ala.1993). To be effective under § 34-3-21, an agreement must be made in writing or entered in the minutes of the court.
 
 Holmes v. Sanders,
 
 729 So.2d 314, 316 (Ala.1999); and
 
 Ex parte Kiely,
 
 579 So.2d 1366, 1367 (Ala.Civ.App.1991).’
 

 “Proffitt v. Cochran,
 
 742 So.2d 188, 189 (Ala.Civ.App.1999).”
 

 Id.
 
 at 348.
 

 We concluded in
 
 Willis
 
 that “[t]he judgment [was] due to be reversed because it [did] not properly document and incorporate the agreement of the parties.”
 
 Id.
 
 at 349. In the present case, it is unclear whether the parties ever reached an agreement. Regardless, we conclude that any agreement that may have been entered into by the parties in the present case is not valid and binding because there is no indication in the record that the agreement was reduced to writing or entered in the minutes of the trial court. § 34-3-21;
 
 Willis, supra.
 

 On appeal, the husband does not dispute that the trial court did not conduct an ore tenus hearing on any issue presented in the divorce action, other than the March 2009 hearing on the validity of the ante-nuptial agreement. Because there was no hearing conducted on any pending issue other than the validity of the antenuptial agreement, without a binding settlement agreement the trial court had no basis to enter a divorce judgment determining the
 
 *679
 
 rights and obligations of the parties.
 
 [4]
 

 See Willis,
 
 45 So.3d at 349 (“The determination of the issues in dispute between the parties would have been within the trial court’s discretion
 
 if
 
 it had received any evidence on those issues.”). Accordingly, we reverse the divorce judgment, insofar as it addresses issues other than the validity and enforceability of the antenuptial agreement, and the cause is remanded with instructions to the trial court to conduct a proceeding that is consistent with this opinion.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . Although it appears that the trial court was attempting to certify the May 5, 2009, judgment as a final judgment pursuant to Rule 54(b), Ala. R. Civ. P., the trial court's attempted certification was invalid because the trial court’s purported certification "neither cited Rule 54(b) nor used the language of Rule 54(b).”
 
 Blythe v. Blythe,
 
 976 So.2d 1018, 1020 (Ala.Civ.App.2007) (dismissing an appeal from a nonfinal judgment after determining that the trial court had failed to enter a valid Rule 54(b) certification).
 

 [2]
 

 . We note, however, that, even if the wife had pursued her appeal to this court, we would have been required to dismiss the wife’s appeal as having been taken from a nonfinal judgment because the trial court did not properly certify the May 5, 2009, judgment as a final judgment pursuant to Rule 54(b), Ala. R. Civ. P.
 
 See supra
 
 note 1, and
 
 Blythe v. Blythe,
 
 976 So.2d 1018, 1020 (Ala.Civ.App.2007).
 

 [3]
 

 . The wife submitted into evidence a copy of a warranty deed, dated March 24, 2004, that conveyed title to a piece of property in South-side to the husband and the wife jointly with a right of survivorship.
 

 [4]
 

 . As noted above, the record contains a CS-42 Child-Support Guidelines form that was filled out by the husband. The wife, at the hearing on her postjudgment motion, argued that she was entitled to present evidence disputing the amount of the husband’s gross income. We agree.